Janet **GILMER,** and All others Similarly Situated, By Plaintiff,

v.

The **WALT DISNEY COMPANY** and Buena Vista Home Video, Defendants.

Civil No. 96–5012.

United States District Court, W.D. Arkansas, Fayetteville Division.

Feb. 8, 1996.

1004

Thomas Allan Mars, Everett, Shemin, Mars & Stills, Fayetteville, AR, for Plaintiff.

Larry W. Burks, Kevin Crass, William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, for Defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This matter is currently before the court on the plaintiff's motion to remand this action to the Circuit Court of Washington County, Arkansas, and the defendants' response thereto.

On December 15, 1995, Janet Gilmer, filed this putative class action[1] on behalf of herself and all other similarly situated individuals throughout the United States who have purchased home videos, namely "The Lion King" and "Little Mermaid," produced and distributed by the defendants. The second amended complaint filed on January 12, 1996, asserts the following causes of action: (1) common law fraud; (2) negligence; and (3) breach of warranties.

No specific award of damages is sought. Instead, the complaint requests an award of "all damages that are recoverable at law, including punitive damages, or, in the alternative, legal rescission and a return of the purchase price, attorney's fees, the costs of this action, and all other relief to which the class may be entitled." *Second Amended Complaint* p. 14.

On January 16, 1996, defendants removed the action to this court on the basis of diversity of citizenship and the existence of the requisite amount in controversy. 28 U.S.C. §§ 1332, 1441. Plaintiff concedes the existence of diversity of citizenship[2] and that the removal was procedurally correct. However, plaintiff contends this court lacks subject matter jurisdiction because the amount in controversy requirement of 28 U.S.C. § 1332(a) has not been met.

### Burden of Proof.

The first issue raised by the parties is what burden of proof must a removing defendant face when a plaintiff seeks an unspecified amount of damages in her state court complaint. According to plaintiff, in the Eighth Circuit the defendants' burden is to prove the amount in controversy by a "legal certainty." In support, plaintiff cites *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213 (8th Cir.1992). According to the defendants, this issue has yet to be resolved by the Eighth Circuit. It is the defendants' position that the applicable burden of proof is the preponderance of the evidence. Defendants rely primarily on *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995).

▮ We begin with the principle that federal courts are courts of limited jurisdiction. *See e.g., Kokkonen v. Guardian Life Ins. Co. of America,* — U.S. —, —, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). As such, they have the power to hear only those cases that they have been authorized to hear by Congress or by the Constitution. *Id.* If the court lacks subject matter jurisdiction, any action it takes is a nullity. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951). The lack of subject matter jurisdiction may be raised at any point including being raised

---

1. The court uses the term putative class action because no request for class certification has as of yet been filed. However even though a class has not been certified, the courts have treated cases containing class action allegations as class actions for the purposes of ascertaining the existence of federal jurisdiction. *See e.g., In re Abbott Labs.*, 51 F.3d 524, 525 n. 1 (5th Cir.1995); *City of Inglewood v. City of Los Angeles*, 451 F.2d 948, 951–55 (9th Cir.1971); *Gilman v. Wheat, First Securities, Inc.*, 896 F.Supp. 507 (D.Md.

1995); *Visintine v. Saab Auto. A.B.*, 891 F.Supp. 496, 497 n. 3 (E.D.Mo.1995); *Fountain v. Black*, 876 F.Supp. 1294, 1297 n. 5. (D.Ga.1994).

2. In a class action founded upon diversity jurisdiction a court looks only to the citizenship of the named parties. *Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

on appeal by the party originally invoking the jurisdiction of the court. *Id.*

The party seeking to invoke the jurisdiction of the federal courts has the burden of proving the existence of jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). *See also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702 at 18–19 (2d ed. 1985). Thus, in removal cases the burden is on the defendant. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). The determination is made on the basis of the record at the time of removal. *Keene Corp. v. United States,* 508 U.S. 200, 207–08, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993).

In making the determination in a diversity case, the court looks to state law to determine the nature and extent of the right to be enforced as well as the state measure of damages and the availability of special and punitive damages. *Federal Practice and Procedure,* § 3702 at 24–25. The court may also look to decisions rendered in cases involving the same type of suit. *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993); *Bolling v. Union National Life Ins. Co.,* 900 F.Supp. 400, 404 (M.D.Ala.1995).

For cases originally filed in federal court the Supreme Court has developed the "legal certainty" test. In *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court described the test in this way:

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction.... But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*Id.,* 303 U.S. at 288–89, 58 S.Ct. at 590–91.

Thus, where plaintiff has alleged a sum certain that exceeds the amount in controversy requirement, that amount controls if made in good faith. *Id.* The court can refuse jurisdiction in such cases only if it appears to a legal certainty that the case is really for less than the jurisdictional amount. *See also State of Missouri v. Western Surety Co.,* 51 F.3d 170, 173 (8th Cir.1995) ("[W]hen a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence.").

Plaintiff is generally regarded as the master of his or her complaint and can therefore bar removal if the complaint pleads damages in a specific amount less than the jurisdictional requisite for removal based on diversity of citizenship. Under such circumstances, the case should be remanded unless the defendant "can prove to a legal certainty that plaintiff's claim must exceed $50,000." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) (consideration given to attorney's integrity and duty of candor with the court when the attorney claims a specific amount of damages less than the jurisdictional amount). *See also Visintine v. Saab Auto, A.B.,* 891 F.Supp. 496 (E.D.Mo.1995) (Where complaint states total actual and punitive damages sought by named plaintiff and each individual putative class member is under $50,000 defendants must show that it appears to a legal certainty that the amount in controversy exceeds $50,000.).

Thus, the legal certainty test has been applied to actions originally filed in federal court as well as to actions removed to federal court from state court where the plaintiff's

prayer is for a specific sum. Whether the legal certainty test applies where the state court complaint does not contain a demand for a specific monetary amount or contains a claim only for more than a specified amount has been the subject of much debate.[3] The courts have utilized a variety of tests under these types of cases.

As one well-known treatise states:

When the plaintiff fails to specify damages or specifies damages less than $50,000, the jurisdictionally sufficient amount, the defendant's burden for establishing jurisdiction for the purposes of removal varies according to the court. One standard asks the defendant to show to "a legal certainty" that the amount exceeds $50,000. Another standard asks the defendant to prove "by a preponderance of evidence" that the amount exceeds the jurisdictional threshold. A third standard asks the defendant to show "some reasonable probability" that the damages will exceed $50,000. Finally, some courts look at the facts of the case and make a decision without enunciating any particular standard at all.

14A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3725 (Supp.1995).

Contrary to plaintiff's assertion, the Eighth Circuit appears not to have decided what burden of proof is to be applied in removal cases where the plaintiff has sought an unspecified amount of damages. The case of *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213 (8th Cir.1992) involved a class action originally filed in federal court in which the defendant requested dismissal on the grounds that the requisite amount in controversy did not exist. The court naturally applied the legal certainty test to that case.

We are persuaded by the reasoning of courts adopting the preponderance of the evidence standard in cases such as this one where the complaint has failed to specify the damages sought. In such cases the "attorney's integrity and duty of candor with the court arising from signing the complaint are not implicated...." *Bolling v. Union Nat. Life Ins. Co.*, 900 F.Supp. 400, 404 (M.D.Ala. 1995). *See also Allen v. R. & H. Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994); *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993); *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir.1992); *McCorkindale v. American Home Assurance Co.*, 909 F.Supp. 646 (N.D.Ohio 1995); *Bergstrom v. Burlington Northern R. Co.*, 895 F.Supp. 257 (D.N.D.1995).

These courts have attempted to, and in the court's view have, "properly balanced the plaintiff's right to pursue her action in the forum of her choosing and the defendant's right to a federal forum in those cases where federal jurisdiction exists." *Bolling*, 900 F.Supp. at 404. *See also Gilman v. Wheat, First Securities, Inc.*, 896 F.Supp. 507 (D.Md.1995) (Court must balance federalism concerns, respect plaintiff's forum choice, and follow Congress's intent to control diversity caseloads).

As the court in *Gafford* noted:

by statute, Congress has offered defendants a relatively neutral forum and has policed the diversity jurisdiction of the federal court system, balancing the interest at play in the legislation it passes. We believe that the "preponderance of the evidence" best comports with the balance struck. It does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well

---

**3.** Plaintiff suggests this case is one where the plaintiff has requested less than the jurisdictional amount because of the provisions of Rule 8(a) of the Arkansas Rules of Civil Procedure. Rule 8(a) provides in part that "[i]n claims for unliquidated damage, a demand containing no specified amount of money shall limit recovery to an amount less than required for federal court jurisdiction in diversity of citizenship cases, unless language of the demand indicates that the recov-

ery sought is in excess of such amount." Adoption of the plaintiff's position would allow state rules of procedure to determine whether federal jurisdiction existed. This approach would lead to inconsistent applications of federal jurisdictional rules. We are unwilling to allow a state procedural rule to have such force. *See e.g., Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994).

require the defendant to research, state and prove the plaintiff's claim for damages. On the other end of the spectrum, requiring the defendant to prove that the amount in controversy "may" meet the federal requirement would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible. Considering the ends of the spectrum,

> [f]or all practical purposes . . . , whether a federal court can exercise diversity of citizenship jurisdiction over a case would depend upon which part has the burden of proof to prove or [to disprove] jurisdictional amount to a legal certainty, since the parties might well prefer to forego their chosen forum rather than being forced to prove the other side's damages case.

*Garza* [v. Bettcher Industries, Inc.,] 752 F.Supp. [753] at 756–57 [ (E.D.Mich.1990) ] We believe that the mean between the extremes unsettles to the least extent the balance struck between the defendant's right to remove and the federal interest in limiting diversity jurisdiction.

*Gafford v. General Elec. Co.*, 997 F.2d 150, 159–60 (6th Cir.1993). We agree that "[t]he important issue of whether a federal court has jurisdiction over a lawsuit on the basis of the amount in controversy should be decided on the basis of substance, not gamesmanship." *Bolling*, 900 F.Supp. at 405.

 Accordingly we hold that in diversity cases in which the state court complaint does not specify the amount of damages sought, the removing defendant's burden is to establish by a preponderance of the evidence that the amount in controversy is greater than $50,000.[4] Defendants may meet their burden "by sufficient proof that a plaintiff's verdict reasonably may exceed that amount." *Bolling*, 900 F.Supp. at 405. Likewise, this burden can be met if it is "facially apparent that the claims are likely above 50,000." *Allen*, 63 F.3d at 1335 (citations omitted). "If not, a removing attorney may support federal jurisdiction by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Id.*

 However, removal cannot be "based simply upon conclusory allegations." *Id.* Finally under any manner of proof, "the jurisdictional facts must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Id.*

### *Zahn and Supplemental Jurisdiction.*

The next issue is whether each class member must satisfy the amount in controversy requirement or whether the court has supplemental jurisdiction over the unnamed members of the class even if they do not satisfy the amount in controversy requirement. According to *Zahn* "any plaintiff without the jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims." *Zahn v. International Paper Co.*, 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973). Defendants submit *Zahn* no longer poses a procedural obstacle to diversity jurisdiction in this case because of the provisions of 28 U.S.C. § 1367.[5]

---

4. Plaintiffs who desire to remain in state court can, of course, include in their complaint a specific demand for damages in an amount less than the jurisdictional amount. Our case presents a different legal issue. However, we note that a removing defendant's burden of proof in such cases is a heavy one because once again the attorney's duty of diligently researching his client's case and his duty of candor to the tribunal is implicated. *See e.g., Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994) (defendant must prove to a legal certainty that plaintiff's claim must exceed $50,000). The plaintiff's claim, when it is specific and contained in a pleading signed by the lawyer "deserves deference and a presumption of truth." *Id.* In such cases, the court assumes that "plaintiff's counsel best knows the value of his client's case and that counsel is engaged in no deception." *Id.* The court also presumes that "plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer." *Id.*

5. Alternatively, should the court decide not to reach this issue or decide it adversely to the defendants they argue both punitive damages and attorneys fees constitute a "common and

Subsequent to the enactment of § 1367, some courts have held that once the named plaintiff meets the amount in controversy requirement supplemental jurisdiction may be exercised over the remaining plaintiffs, even if they do not meet the required level of damages. *See e.g., In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir.1995). However, it appears this issue has not yet been resolved by the Eighth Circuit and the other federal courts are far from unanimous in their decisions. *See e.g., In re Potash Antitrust Litigation,* 866 F.Supp. 406 (D.Minn. 1994) (summary of pro-*Zahn* and anti-*Zahn* cases).

The controversy centers on the impact of 28 U.S.C. § 1367 concerning supplemental jurisdiction which was enacted as part of the Judicial Improvements Act of 1990, § 310 Pub.L. No. 101–650, 104 Stat. 5089, 5113 (1990) on the Supreme Court's holding in *Zahn. Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). As we noted above, *Zahn* requires that, in diversity class actions, each class member's claims must satisfy the jurisdictional amount requirement.

Section 1367 provides in part as follows:

### § 1367. Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

The grant of supplemental jurisdiction contained in subsection (a) is restricted by the language of subsection (b). "Notably, this subsection does not include Federal Rule of Civil Procedure 23 which allows the joinder of parties through the class action mechanism." *Waters v. Grosfeld,* 904 F.Supp. 616, 618 (E.D.Mich.1995).[6]

 The Fifth Circuit in *Abbott* found this omission significant in view of the fact that § 1367 was enacted against the background of *Zahn.* It noted the silence has been interpreted by some commentators to

---

undivided interest" and therefore are exempt from the non-aggregation rule set forth in *Zahn.*

6. Some commentators have questioned the applicability of § 1367(b) to cases removed from state court under 28 U.S.C. § 1441. The argument is that subsection (b) applies only where the district court's "original jurisdiction" is founded "solely" on § 1332. In removed cases the "original jurisdiction" of the district court would seem to be

granted at least in part by § 1441. *See e.g.* Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction under 28 U.S.C. § 1367,* 78 Marq.L.Rev. 973, 1018 (Summer 1995); Kristen M. Niemi, *The "Noncontroversial" Statute: Have Expressed Concerns of 28 U.S.C. § 1367 Come to Light?,* 72 U.Det.Mercy L.Rev. 397 (Winter 1995).

mean that Congress overruled *Zahn.* *Abbott,* 51 F.3d at 527. Others including some of the drafters have disagreed. *Id.* In the case of *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709 (C.D.Cal.1995), the court found it

> evident that the plain language of subsection (a) is entirely consistent with *Zahn.* Through the incorporation of the language "or as expressly provided otherwise by federal statute," Congress specifically included as an exception to § 1367(a) any other federal statute, including § 1332 (and its most relevant judicial interpretations *Zahn* and *Snyder* ) (emphasis added). Despite references to diversity jurisdiction and § 1332, and with full knowledge of the Supreme Court's long-standing interpretation of that language, nowhere in the Act did Congress change the language of 1332. In choosing once again to keep the language of § 1332 in its original form, Congress reaffirmed the Supreme Court's historical treatment of the language "matter in controversy."
>
> Taking into account the plain language of § 1367, the purpose of the Act (as expressed in the legislative history), and the fact that Congress has raised the amount in controversy limit steadily over the years, without ever indicating that the Supreme Court's interpretation of the "matter in controversy" in class actions was contrary to Congressional intent, the Court finds no basis for holding that *Zahn* has been legislatively overruled.

*Borgeson,* 909 F.Supp. at 712.

In discussing the countervailing arguments the *Abbott* court stated:

> Perhaps, by some measure transcending its language, Congress did not intend the Judicial Improvements Act to overrule *Zahn.* The House Committee on the Judiciary considered the bill that became § 1367 to be a "noncontroversial" collection of "relatively modest proposals," not the sort of legislative action that would upset any long-established precedent like *Zahn....* Plaintiffs argue that the Act was prompted not by a congressional desire for wholesale revisions of the jurisdictional rules, but by the more limited desire to restore traditional understandings of federal jurisdiction, which were upset by *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In *Finley,* the Supreme Court held that federal courts could not exercise pendent-party jurisdiction without an express legislative grant, a grant never thought necessary before.... In short, Congress intended the Act to "essentially restore the pre-*Finley* understandings of the authorization for and limits on other forms of supplemental jurisdiction,".... A disclaimer in the legislative history strives to make this point clear by stating: [T]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to "*Finley.*" ... The passage cites *Zahn* as a pre-*Finley* case untouched by the Act.

*Abbott,* 51 F.3d at 528.

However, the *Abbott* court found it inappropriate to look to the legislative history.

> We cannot search legislative history for congressional intent unless we find the statute unclear or ambiguous. Here, it is neither. The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statutes second section. Class actions are not among the enumerated exceptions.
>
> Omitting the class action from the exception may have been a clerical error. But the statute is the sole repository of congressional intent where the statute is clear and does not demand an absurd result. *See West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 99–100, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991).... Abolishing the strictures of *Zahn* is not an absurd result.... We are persuaded that under § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives.

*Abbott,* 51 F.3d at 528–29.

Other courts have not been so convinced and have resorted to the legislative history to

conclude that § 1367 does not change or overrule *Zahn.* At least one court has in part been convinced by the "superior numerical strength of the pro-*Zahn* faction," and by the fact that the issue has engendered so much discussion both on a scholarly level and in the case law. *Potash,* 866 F.Supp. at 413. Given the effort expended on determining the meaning and purpose of § 1367, the court was convinced the meaning and purpose were not clear. *Id.* at 413–14 & n. 18.

In the case of *Waters v. Grosfeld,* 904 F.Supp. 616 (E.D.Mich.1995) the court found "[t]he failure of the statute to expressly cover class actions, especially in light of *Zahn,* renders its scope very ambiguous." *Id.* at 620. Thus, it was "imperative that this Court look to the legislative history of the statute in order to determine its reach with respect to class actions." *Id.* Given the legislative history of § 1367, the court concluded it was "clear that Section 1367 does not obviate the force and effect of *Zahn.*" *Id.*

■■■■ We agree with the reasoning of the Fifth Circuit in *Abbott.* The Supreme Court has made clear that the plain language of the statute controls whenever it is unambiguous even if the legislative history suggests a contrary meaning. *See West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 99–100, 111 S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991) ("statute is the sole repository of congressional intent where the statute is clear and does not demand an absurd result"); *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 30, 109 S.Ct. 2273, 2296, 105 L.Ed.2d 1 (1989) (plain language of statute controls even if contrary legislative history exists). The courts that have found § 1367 to be ambiguous have resorted to caselaw and/or legislative history to create the ambiguity. We reject this reasoning and conclude the plain language of § 1367 confers supplemental jurisdiction over the claims of the unnamed class members, regardless of their ability to independently meet the amount in controversy requirement.

*Amount in Controversy.*

■■■■ In general the compensatory damage claims of class members may not be aggregated unless the class members are enforcing a "single title or right in which they have a common and undivided interest." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). *See also Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973); *Allison v. Security Ben. Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992). To derive from a single title or right the "claims of right must be 'integrated' meaning that their respective rights to damages arise from the same legal source." [7] *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1331 (5th Cir.1995). *See also Troy Bank v. G.A. Whitehead and Co.,* 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911) (undivided claim is one which neither plaintiff can enforce in the absence of the other); *Potrero Hill Community Action Committee v. Housing Authority of City and County of San Francisco,* 410 F.2d 974 (9th Cir.1969) (claims are properly aggregated when they derive from rights which plaintiffs hold in group status). If the common and undivided interest exception does not apply the non-aggregation rule requires that at least one individual must have claims greater than $50,000 for the court to have diversity jurisdiction. *Zahn,* 414 U.S. at 300, 94 S.Ct. at 511.

■■■■ In determining the amount in controversy, both punitive damages and attorney's fees are considered. *Allison,* 980 F.2d at 1215 (punitive damages); *Capitol Indem. Corp. v. Miles,* 978 F.2d 437, 438 (8th Cir.1992) (attorney's fees). However, the Eighth Circuit has said it "scrutinize[s] a claim for punitive damages more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed." *State of Missouri v. Western Surety Company,* 51 F.3d 170, 173 (8th Cir.1995).

As we noted above, plaintiff's complaint contains three separate theories of recovery, negligence, breach of warranties, and misrepresentation. The factual underpinnings of

7. No argument is made that the compensatory damage claims of the purported class members derive from a single right in which the plaintiffs have a common and undivided interest.

plaintiff's claims are that the video cassettes of the "The Lion King" and "The Little Mermaid" contain drawings and animated scenes depicting sexual messages or other sexually related material unsuitable for young children and/or family videos.[8]

Plaintiff states her complaints [9] do not request damages for mental anguish, personal injury, or damage to other property. *Plaintiff's Brief* at p. 4, n. 2. It is plaintiff's position that under all these theories, the measure of damages under Arkansas law is the economic loss incurred by the plaintiff which is defined as the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Additionally, plaintiff states she is entitled to an award of reasonable attorney's fees if she prevails on her breach of warranty claims pursuant to Ark.Code Ann. §§ 16–22–308 and 4–2–715(2) as well as an award of punitive damages based on the allegations of misrepresentation. Plaintiff has by affidavit asserted that she paid less than $25 apiece for the two videos she purchased. Based on this information, plaintiff states it is apparent that her claim for economic loss is not even close to $50,000.

The court and the defendants are puzzled by plaintiff's assertion that she has limited her request for damages and/or is limited by law to the recovery of damages for economic loss only. There is nothing in the second amended complaint that so limits the plaintiff; rather, plaintiff prays for "all damages that are recoverable at law." Nor do we believe plaintiff is necessarily precluded by law from seeking mental anguish or other intangible damages. Instead, it appears that one might legitimately suspect that plaintiff has attempted to cleverly craft her complaint so as to avoid federal court jurisdiction while, at the same time, preserving just about any argument and claim which she cares to make in state court. If plaintiff had, in fact, intended to restrict her claims as her counsel now argues, counsel was certainly capable of saying that in the complaint in plain and unmistakable terms. For example, as already indicated, if plaintiff had prayed for a specific amount under $50,000, this case would have been virtually impossible to remove to federal court.

It appears that plaintiff has attempted to "have her cake and eat it too." She argues in this court that she is only entitled to crumbs, but has carefully preserved her right to insist that she is entitled to the whole cake when she gets back to state court.

■■■ The Arkansas courts have applied both the benefit of the bargain measure and the out-of-pocket measure to recovery in fraud cases. *See* Howard W. Brill, *Arkansas Law of Damages* § 35–7 (2d ed. 1990 & Supp.1994) (hereinafter *Brill* § ——). Damages for mental anguish are not recoverable on a fraud or deceit claim, *Higginbottom v. Waugh*, 313 Ark. 558, 560–61, 856 S.W.2d 7 (1993). Similar measures of damage apply to the breach of warranty claims. *Brill* § 34–9. Under both fraud and breach of warranty, plaintiff may recover consequential and incidental damages. These types of damage are typically economic loss types of damages.

■■■ However, no such limitation applies to the negligence claim. Damages recoverable on a negligence claim include compensation for mental anguish, etc. *Brill* § 35–1. Additionally, plaintiff has included a claim for punitive damages which are available on the fraud claim if the requisite showing is made. *Ray Dodge, Inc. v. Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972) (punitive damages may be awarded where the fraud is

---

**8.** The complaint itself contains a significant amount of verbiage regarding the history of Disney and the responsibility assumed by Disney in producing motion pictures for a target audience of children. The complaint even quotes, among others, Walt Disney who died in 1966 long before the videos at issue were produced.

In fact, it is doubtful that the 14 page complaint (not including 5 pages of exhibits), complies with the letter and spirit of Rule 8 of the Arkansas Rules of Civil Procedure, since it goes far beyond being "a statement in ordinary and concise language of facts" showing jurisdiction, venue, and entitlement to relief. Perhaps it was written for a wider audience.

**9.** Prior to removal, plaintiff amended her complaint twice. An amended complaint supersedes a prior filed complaint. Accordingly, no reference need be made to the original or first amended complaint.

aggravated, in the sense of being malicious, deliberate, gross, or wanton).

 With respect to punitive damages, the plaintiff reminds the court that claims for punitive damages must be closely scrutinized. Additionally we are reminded that Arkansas law, while it does not specifically require a reasonable relationship between an award of compensatory and punitive damages, does suggest that such a relationship is to be considered when determining whether an award of punitive damages is excessive.

Further, plaintiff argues that the vast majority of federal courts have found no distinction between the aggregation of attorney's fees and punitive damages and have concluded punitive damages may not be aggregated to satisfy the amount in controversy requirement. Although the Eighth Circuit has not decided this precise issue, plaintiff informs the court that one district court within the Eighth Circuit has determined that punitive damages may not be aggregated. *See Visintine v. Saab Automobile A.B.*, 891 F.Supp. 496 (E.D.Mo.1995).

Assuming the validity of any of the plaintiff's claims, the defendants argue that the request for punitive damages is, on its face, sufficient to invoke the jurisdiction of this court. Defendants additionally argue that the individual punitive damage claims of class members may be aggregated to satisfy the amount in controversy requirement.

 As defendants point out, under Arkansas law there is no fixed standard for the calculation of punitive damages; the decision is left entirely to the discretion of the jury with due consideration of the attendant circumstances. *Cater v. Cater*, 311 Ark. 627, 632, 846 S.W.2d 173 (1993). Punitive damages are not intended to compensate an injured party. *Holmes v. Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961).

 The damages do not depend on the underlying cause of action or the injury actually suffered by the plaintiff, but instead depend upon the defendant's conduct. *Brill* § 6–1. "Such damages constitute a penalty and must be sufficient not only to deter similar conduct on the part of the same tortfeasor, but they must be sufficient to deter any others who might engage in similar conduct." *Id.* The Arkansas courts review such awards to determine if the award shocks the court's conscience or demonstrates passion or prejudice on the part of the jury. *Id.* It has been noted that "[b]oth the Arkansas Supreme Court and federal courts applying Arkansas law have affirmed escalating jury awards of punitive damages." *Brill* § 6–4 (Supp.1994) (footnote omitted). The Arkansas Supreme Court has also indicated that substantial punitive damage awards are justified in cases of commercial fraud. *Moore Ford Co. v. Smith*, 270 Ark. 340, 348, 604 S.W.2d 943 (1980) (case involving the sale of cars that had suffered prior damage without informing purchasers of the prior damage).

 Having carefully reviewed the allegations of the complaint we conclude that, while the named plaintiff's actual damages are slight, it is more likely than not that if the plaintiff prevails the punitive damage award would exceed the jurisdictional amount.[10] The plaintiff has alleged that she relied upon the Disney name when purchasing the videos and that, despite Disney's knowledge that the videos contained drawings and animated scenes depicting sexual messages, Disney continued to market the videos for family viewing. Further, plaintiff states Disney continued to deny any wrongdoing after the matter was brought to their attention and took no steps to recall the material.

Defendants' alternate argument is that the claims for punitive damages and attorney's fees represent common and undivided interests that are subject to aggregation. Once these claims are aggregated, the defendants contend it is unquestionable that the amount in controversy requirement is met.

**10.** The court hastens to say that it is making no determination on the merits of this action; nor are we ruling that plaintiff has made a submissible case on punitive damages. Rather, the court is merely reviewing the allegations of the complaint to determine whether the claims are colorable for the purpose of conferring jurisdiction. This is not a case in which extensive discovery has been conducted. The case is still at the pre-answer stage.

Recognizing the prohibition against aggregating damages unless the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest," *Snyder*, 394 U.S. at 335, 89 S.Ct. at 1056, the Fifth Circuit in *Allen* determined that punitive damage claims asserted by 512 plaintiffs presented a united claim for a common and undivided interest under Mississippi law.

The court began by examining the nature of punitive damages in general noting that "[t]he almost unanimous rule is that '[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.'" *Allen*, 63 F.3d at 1332, *quoting, City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981).

The court then turned to an examination of Mississippi law noting that its law on punitive damages followed the majority rule. It found that punitive damages in Mississippi were "fundamentally collective; their purpose is to protect society by punishing and deterring wrongdoing." *Allen*, 63 F.3d at 1333. The "focus is not any one individual plaintiff; instead, the award is tailored to the defendant's wealth and wrongdoing." *Id.* The court noted:

> Because punitive damages in Mississippi are not compensatory, they are individual awards in function only. While separate plaintiffs may seek an award in separate cases, the narrow right to seek such damages exists only because public policy as expressed through state statutes and common law so dictate.... An individual's damages or harm is relevant only to assessing the defendant's wrongdoing.

*Id.*

Finally, the court noted the general rule is that "a plaintiff does not have a claim of right to punitive damages, and 'it is always within the discretion of the jury or trial judge to withhold them.'" *Id.* (citation omitted).

The court concluded that

> while punitive damages do not fall neatly into either the "non-aggregation" caselaw

or the "common and undivided interest" exception, the unique nature of these awards requires, at least in Mississippi, that the full amount of alleged damages be counted against each plaintiff in determining the jurisdictional amount. As punitive damages are collective awards, each plaintiff has an integrated right to the full amount of an award. An award's ultimate distribution does not change this result.

> Punitive damages are, to use the language of the caselaw, *undivided* claims of right with a potentially *separable* award. Here, each of the 512 plaintiffs was empowered to bring a claim for punitive damages separately. The fact that they choose not to pursue their claims individually does not limit each plaintiff's alleged entitlement to the award; it only affects its distribution. The limiting factor here was the plaintiffs' decision to file jointly.

*Id.* at 1333–34.

The court further noted that in

> class actions or multi-plaintiff suits, the defendant's potential exposure to a large punitive damage award is not affected by the failure of individual claims as long as one plaintiff is successful. Accordingly, in that situation, the defendant has no interest in the distribution of the award, a fact that has long supported the conclusion the plaintiff's claims of right are common and undivided.

*Id.* at 1334. The court concluded that under Mississippi law "the amount of such alleged award is counted against each plaintiff's required jurisdictional amount." *Id.* at 1335.

Other courts have held that class members seeking punitive damages are not "seeking to enforce 'a single title or right in which [they] have a common and undivided interest,' where ... they do not have such an interest in the underlying actual damages." *Visintine v. Saab Automobile A.B.*, 891 F.Supp. 496, 498 (E.D.Mo.1995). "Rather, their claims for punitive damages are as separate and distinct as their claims for actual damages." *Id. See also Smiley v. Citibank*, 863 F.Supp. 1156 (C.D.Cal.1993).

We agree with the reasoning set forth in *Allen*. Punitive damages under Ar-

kansas law are designed to punish the wrongdoer and deter others from similar conduct. The focus is on the conduct of the defendants and the likely harm that flowed from their actions. Therefore, we agree that the unique nature of these awards requires that the full amount of the alleged punitive damages should be counted against each plaintiff in determining the jurisdictional amount.

With respect to attorney's fees, plaintiff concedes it is likely that a "common fund" fee award would exceed the required jurisdictional amount. However, plaintiff argues the potential recovery of a "common fund" attorney's fee may not be considered in measuring the amount in controversy. Plaintiff cites *Goldberg v. CPC International, Inc.,* 678 F.2d 1365 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), *Visintine v. Saab Automobile A.B.,* 891 F.Supp. 496 (E.D.Mo.1995) and *Mayo v. Key Financial Services, Inc.,* 812 F.Supp. 277 (D.Mass.1993). Therefore in determining the amount in controversy, plaintiff contends we must determine whether an individual fee award as authorized by Arkansas statute would exceed the jurisdictional amount. In arguing that it will not, plaintiff has submitted the affidavit of her counsel.

In deciding whether a potential award of attorney's fees should be attributed to the named plaintiff only, rather than pro rata to each class member, the courts have looked to the state law providing for an award of fees and whether the state law gave the class representative the right to recover all the attorneys' fees generated by the action. Additionally, the courts have examined whether the potential attorney's fee award fit within the common and undivided interest exception to the non-aggregation rule.

Applying this analysis, a number of courts have held that a potential award of fees may not be attributed solely to the named plaintiff under either the law of the particular state or under the common and undivided interest exception. These courts reasoned, *inter alia,* that to attribute the total award of fees to the named plaintiffs only would violate the non-aggregation rule of *Zahn. See Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365 (9th Cir.),

*cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *Gilman v. Wheat, First Securities, Inc.,* 896 F.Supp. 507, 511 (D.Md. 1995); *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo.1993).

When the law of the state attributes the entire award of a class's attorney's fees to the named plaintiffs, courts have used the potential fee award in determining whether the amount in controversy requirement has been met. *See e.g. In re Abbott Laboratories,* 51 F.3d 524, 526–27 (5th Cir.1995). Arkansas courts have "consistently recognized that when a class action results in the recovery of a "common fund" it is proper to allow attorney fees to be paid from the fund." *American Trucking Assoc., Inc. v. Gray,* 295 Ark. 43, 47, 746 S.W.2d 377 (1988); *Powell v. Henry,* 267 Ark. 484, 592 S.W.2d 107 (1980). However, there is nothing in the law of Arkansas to suggest that the total class fee award would be attributed to the named parties. Accordingly, the total amount of potential attorneys' fees must be attributed pro rata among the individual class members. While the total attorneys' fees in this case, given the fact that it purports to be a nationwide class action, would, perhaps exceed the jurisdictional amount, we do not believe that, when the fees are equally distributed across the class or among the claimants, the prorated fees by themselves would be sufficient to create jurisdiction. However, the potential amount of the pro rata distribution of fees can be counted towards the jurisdictional amount.

### Conclusion.

In view of the allegations of the complaint, the causes of action asserted, the prayer for punitive damages, as well as the request for attorney's fees, we conclude the defendants have established it is "more likely than not" that the claims asserted are in excess of the jurisdictional amount. For the reasons stated, a separate order will be entered denying the motion to remand.