**Bradford L. WILLIAMS, On Behalf of Himself and as Representative of a Class of All Others Similarly Situated, Plaintiff,**

v.

**MOTEL 6 MULTIPURPOSE, INC., et al., Defendants.**

**No. LR–C–97–991.**

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 30, 1998.

Steven E. Cauley, Scott E. Poynter, Law Offices of Steven E. Cauley, P.A., Henry Hodges, Henry Hodges, P.A., Little Rock, AR, Clay Ragsdale, Ansel Strickland, Law Offices of M. Clay Ragsdale, Birmingham, AL, for the Plaintiff.

Phil Campbell, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., No. Little Rock, AR, for the Defendants.

## ORDER

MOODY, District Judge.

Plaintiff Bradford L. Williams filed the above-styled action on October 27, 1997 in the Circuit Court of Pulaski County, Arkansas as a Class Action Complaint against defendants, owners, operators, and individual managers of "Motel 6" establishments throughout the state of Arkansas. Plaintiff alleges that defendants have engaged in systematic, unlawful and racially discriminatory practices which have subjected plaintiff and other members of the putative class to harassment and denied them full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Motel 6 facilities on the basis of race.

Plaintiff asserts several state law causes of action against defendants, including discrimination in violation of the general provisions of the Arkansas Civil Rights Act of 1993, Ark.Code Ann. § 16–123–101 *et seq.;* violation of the "hate offenses" provision of the Arkansas Civil Rights Act of 1993, Ark.Code Ann. § 16–123–106; Negligent Misrepresentation; Intentional Infliction of Emotional Distress; and Public Nuisance.

In support of his causes of action, plaintiff alleges that defendants operate at least eleven Motel 6 facilities in the state of Arkansas. Plaintiff asserts that these facilities are places of public resort, accommodation, assemblage, or amusement as defined by Ark.Code Ann. § 16–123–102. He alleges that, on or about May 9, 1997, he requested and received a room at the Motel 6 in North Little Rock, Arkansas. Plaintiff alleges that, after he had checked into his room, Motel 6 called the police department and requested that the police conduct a background check on him. He

claims that, when this check revealed that plaintiff had a warrant out for his arrest relating to an unpaid traffic ticket, Motel 6, without provocation or legitimate business rationale, had the police department come and arrest him. Plaintiff claims such conduct was discriminatory and forms part of a continuous and ongoing practice of racial discrimination at Motel 6 establishments throughout the state of Arkansas from at least the date of October 14, 1994 through the date of the Complaint.

Plaintiff alleges that the individually named defendants are managers of the various Motel 6 facilities in Arkansas and that each has, at all times while employed at Motel 6, maintained a systematic business practice of discriminating against Motel 6 guests and potential guests based on race. Plaintiff asserts that each of the individually named defendants is domiciled in Arkansas.

Plaintiff seeks to represent all similarly situated minority persons who have been subjected to discriminatory practices at Motel 6 establishments in the state of Arkansas between October 14, 1994 and the date of the Complaint and who have thereby suffered damages.

The Complaint requests relief in the form of compensatory and punitive damages, as well as attorney fees as provided for under the Arkansas Civil Rights Act.

Defendants removed to this Court on November 26, 1997, seeking to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants contend that the controversy in this suit is wholly between citizens of different states in that, at the time this action was instituted in the Circuit Court of Pulaski County, Arkansas, plaintiff was and is a citizen of the state of Arkansas; the corporate defendants are Delaware corporations with their principal places of business in Dallas, Texas; and the citizenship of the individually named defendants must be disregarded for purposes of removal, pursuant to 28 U.S.C. § 1441(b), because they are merely nominal parties against whom no cognizable claim for relief has been stated and against whom the plaintiff does not intend to seek relief. Defendants claim that the individually named defendants are not proper, necessary, or indispensable parties to this litigation and have been intentionally and/or fraudulently joined to defeat diversity. Defendants further contend that plaintiff's claims constituting the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, because plaintiff seeks punitive damages on behalf of the purported plaintiff class.

Numerous motions are now pending before the Court.

Having carefully considered the parties' arguments on the plaintiff's Motion to Remand (doc. # 12), the Court finds that the motion should be, and hereby is, granted for lack of subject matter jurisdiction. Accordingly, all other pending motions will be denied as moot.

■ As a court of limited jurisdiction, a federal district court has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *See Bradley v. American Postal Workers Union, AFL–CIO*, 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra*); *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.*, 925 F.2d 1075, 1077 (8th Cir.1991); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987). "The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514, 516 (8th Cir.), *cert. denied*, 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965). Hence, if it "appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

Here, defendants, as the removing parties, bear the burden of establishing feder-

al jurisdiction. *In re Business Men's Assurance Co. of Am.*, 992 F.2d 181 (8th Cir.1993). Having removed this case based on diversity of citizenship pursuant to 28 U.S.C. §§ 1441 and 1446, defendants must prove both complete diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a)(1).

*Diversity of Citizenship*

In addition to the corporate defendants, plaintiff names individual managers of Motel 6 establishments in Arkansas as defendants. Plaintiff alleges that these individual defendants, like plaintiff, are citizens of Arkansas. Therefore, plaintiff asserts that diversity is not complete.

Defendants concede that a number of the individually named defendants Odell Basham, Nakecia Wilson, Charles Petty, Tammy Hicks, Caroline Rackley, and Theresa Medfordare citizens of the state of Arkansas. Thus, because plaintiff is a citizen of Arkansas, this action is not removable on its face. *See Masepohl v. American Tobacco Co.*, 974 F.Supp. 1245, 1250 (D.Minn.1997). However, defendants assert that the citizenship of the individually named defendants should be disregarded because the individually named defendants are merely nominal parties against whom plaintiff is unable to state a colorable claim. Defendants claim these parties have been fraudulently joined for the purpose of defeating diversity jurisdiction.

■ Joinder of an in-state defendant is fraudulent " 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.' " *Banbury v. Omnitrition Int'l, Inc.*, 818 F.Supp. 276, 280 (D.Minn.1993) (*quoting Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)); *accord Schwenn v. Sears, Roebuck & Co.*, 822 F.Supp. 1453, 1455 (D.Minn.1993). Therefore, "fraudulent joinder exists if, whatever the plaintiffs' motive, their claim against an in-state defendant has no chance of success." *Masepohl*, 974 F.Supp. at 1250 (quoting *Schwenn*, 822 F.Supp. at 1455 (citation omitted)). The Court must remand this action to state court if "there is even a possibility" that plaintiff has stated a colorable cause of action against the in-state defendants. *See In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993) (all doubts should be resolved in favor of remand); *Banbury*, 818 F.Supp. at 280 (quoting *Boyer*, 913 F.2d at 111).

As noted above, plaintiff's causes of action asserted in the Complaint include causes for discrimination in violation of the general provisions of the Arkansas Civil Rights Act of 1993, Ark.Code Ann. § 16–123–101 *et seq.;* hate offenses in violation of the Arkansas Civil Rights Act of 1993, Ark.Code Ann. § 16–123–106; Negligent Misrepresentation; Intentional Infliction of Emotional Distress; and Public Nuisance.

■ Arkansas does not recognize the tort of negligent misrepresentation. *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 726, 871 S.W.2d 325, 326 (1994). Thus, plaintiff cannot state a claim against the in-state defendants under this theory.

■ While asserting a cause of action for Intentional Infliction of Emotional Distress, plaintiff has alleged "no reasonable basis in fact or colorable ground supporting" such claims against any of the individually named defendants.

Nor has plaintiff alleged elements necessary to state a claim for "public nuisance" against any of the individually named defendants.

■ With regard to plaintiff's claims asserted under the Arkansas Civil Rights Act, the Court finds that, as in the related case of *Elgin L. Bowers v. Motel 6 Multipurpose, Inc., et al.,* Case No. LR–C–97–806 (hereinafter *"Bowers"*), plaintiff has stated "no reasonable basis in fact or col-

orable ground supporting" claims under the Act against any of the individually named defendants.

Plaintiff argues that the Arkansas Civil Rights Act of 1993 does not prohibit, and, in fact, specifically contemplates, the naming of individuals as defendants to suit under the Act. In support of this argument, plaintiff points to language in the statute imposing liability upon "[e]very **person** who, under color of any statute, ordinance, regulation, custom or usage of this state or any of its political subdivisions" subjects, or causes to be subjected, any person to deprivation of rights, privileges, or immunities secured by the Arkansas Constitution. Ark.Code Ann. § 16–123–105. Plaintiff asserts that the requisite state action in this case exists because Motel 6 must be licensed by the state to do business in Arkansas. Plaintiff also cites the Act's provision prohibiting unlawful retaliation, which states that "No **person** shall discriminate against any individual" because of such individual's opposition to unlawful discrimination or participation in an investigation, proceeding, or hearing under the subchapter. Ark.Code Ann. § 16–123–108.

As in *Bowers*, the Court notes that the Arkansas Civil Rights Act was only recently enacted in 1993 and, in large part, has yet to be interpreted by state courts. Other litigants have sought to bring claims against individual defendants under the provisions cited by plaintiff; however, the plaintiff herein fails to support his argument concerning individual liability by pointing to facts supporting the application of the referenced sections to the individually named defendants in this case. The Court is not persuaded by plaintiff's conclusory assertion that the requisite state action exists for holding defendants liable under Ark.Code Ann. § 16–123–105, based on the state-issued license for Motel 6 to conduct business. Plaintiff has alleged no further facts implicating the state in the alleged discriminatory conduct of the corporate defendants. *See, e.g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (operation of state's regulatory scheme enforced by the state liquor board, except as requiring compliance by club with provisions of its constitution and bylaws containing racially discriminatory provisions, did not sufficiently implicate state in the discriminatory guest policies of the club as to make those practices 'state action' within purview of equal protection clause). Nor has plaintiff made any specific allegations of conduct by the individually named defendants to support claims against them under the Act. *See Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 690 (E.D.Pa. 1973) (plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action).

■ The Court finds that defendants have met their burden of proving complete diversity of citizenship among the properly joined defendants by showing that plaintiff has not stated colorable claims against the individually named defendants under the Arkansas Civil Rights Act or the common law causes of actions asserted.

*Amount in Controversy*

■ The Court, therefore, turns to a determination of whether defendants have met their burden of proving that the amount in controversy exceeds $75,-000. As stated in *Bowers*, the Court concludes that it may assert supplemental jurisdiction over claims of unnamed class members, regardless of their independent ability to meet the amount in controversy requirement of 28 U.S.C. § 1332. *See Gilmer v. Walt Disney Co.*, 915 F.Supp. 1001, 1010 (W.D.Ark.1996) (plain language of 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members). Of course, supplemental jurisdiction may only be exercised over the unnamed class members upon the defendants' showing that the representative plaintiff, himself, meets

the amount in controversy requirement. *Id.* at 1008, 1010.

Plaintiff, in his Complaint, specifically asserts that "[t]he total actual damages, punitive damages, attorney's fees and costs sought by the named Plaintiff and each individual putative class member are less than $74,500 per person." Class Action Complaint, ¶ 5 (doc. # 1).

Where, as here, a Complaint specifically states that total actual and punitive damages sought by the named plaintiff and each individual putative class member is under the requisite amount for federal diversity jurisdiction, the burden is on a removing defendant to prove "to a legal certainty" that the amount in controversy exceeds the jurisdictional amount. *See Gilmer*, 915 F.Supp. at 1005–06 ("Plaintiff is generally regarded as the master of his or her complaint and can therefore bar removal if the complaint pleads damages in a specific amount less than the jurisdictional requisite for removal based on diversity of citizenship."); *Visintine v. Saab Auto., A.B.*, 891 F.Supp. 496 (E.D.Mo. 1995) (defendant must prove amount in excess of jurisdictional requisite to a legal certainty where complaint specifically pleads damages sought by each plaintiff is less than jurisdictional amount).

In removing based on diversity jurisdiction, defendants assert that "[t]he amount in controversy exceeds $75,000, exclusive of interest and costs, because Plaintiff Bradford Williams seeks punitive damages on behalf of the purported plaintiff class." Defendants cite *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), for the proposition that the action is removable on this basis.

In *Tapscott*, a named plaintiff brought a class action in Alabama state court asserting state law causes of action for common law and statutory fraud and civil conspiracy arising from the sale of "service contracts" on automobiles sold and financed in Alabama. The plaintiff sought statutory damages, unspecified compensatory and punitive damages, and injunctive relief.

The defendant removed the action to federal court and plaintiff moved to remand for lack of subject matter jurisdiction, claiming that the amount in controversy did not exceed $50,000–the amount then necessary for diversity jurisdiction.

The district court granted plaintiff's motion to remand and defendant appealed. In reviewing the case on appeal, the Eleventh Circuit applied a "preponderance of the evidence" standard to defendant's burden of proof on the requisite jurisdictional amount because plaintiff had not specified a claim for damages below that amount in the Complaint. *Tapscott*, 77 F.3d at 1357. The Court noted that plaintiff had made a claim for punitive damages on behalf of the putative class and ruled that "[i]f the punitive damages in this putative class action may be considered in the aggregate, then the amount in controversy will exceed the $50,000 requirement." *Id.* at 1357 n. 10 (noting that plaintiffs/appellants had conceded at oral argument that, if considered in the aggregate, punitive damages would exceed $50,000).

In determining whether to consider punitive damages in the aggregate for purposes of meeting the amount-in-controversy requirement, the Eleventh Circuit first stated the general rules that " 'separate and distinct' claims may not be aggregated to satisfy the jurisdictional requirement," but that, "aggregation is permissible ... where 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.' " *Id.* at 1357 (quoting *Snyder v. Harris*, 394 U.S. 332, 335–36, 89 S.Ct. 1053, 1056–57, 22 L.Ed.2d 319 (1969)). The Court then rejected the plaintiff/appellant's contention that punitive damages could not be aggregated in the case at hand because it involved separate, individual contract claims between the parties as opposed to a single wrong by defendant/appellee, such as a mass tort.

Instead, the Eleventh Circuit focused on an examination of the nature of punitive

damages under Alabama law, finding that their purpose in Alabama is to deter wrongful conduct and punish those responsible. *Id.* at 1358. The court further noted that "any punitive damage award in this case would be made on the wrongfulness of the defendant's course of conduct as a whole," and ruled, therefore, that punitive damages should be considered in the aggregate in determining the amount in controversy. *Id.* at 1358–59.

In ruling as it did in *Tapscott*, the Eleventh Circuit expressly stated that its "holding in this case is not to be taken to establish a bright line rule that any class claim for punitive damages may be aggregated to meet the amount-in-controversy requirement." *Id.* at 1359. The Court noted that "[w]hile the facts in this case result in an aggregation of punitive damages, other factual situations may dictate that punitive damages are non-aggregable." *Id.*

In support of their claim of diversity jurisdiction, defendants also cite the Court to *Gilmer*, 915 F.Supp. at 1013–14, wherein Judge Waters considered punitive damages in the aggregate in determining that the amount in controversy satisfied the jurisdictional requisite in that case.

After careful consideration, the Court concludes that the facts of this case require that punitive damages be considered as separate and distinct for each plaintiff in determining the amount in controversy.

*Gilmer*, concerned a plaintiff's class action complaint asserting causes of action against the Walt Disney Company under Arkansas law. The plaintiff asserted causes for common law fraud, negligence, and breach of warranties against Disney arising out of its production and distribution of its "Lion King" and "Little Mermaid" home videos. Specifically, plaintiffs claimed that the video cassettes contained drawings and animated scenes depicting sexual messages or other sexually related material unsuitable for young children and/or family videos. *See* 915 F.Supp. at 1004, 1010–11. Plaintiff alleged that "she relied upon the Disney name when purchasing the videos and that, despite Disney's knowledge that the videos contained drawings and animated scenes depicting sexual messages, Disney continued to market the videos for family viewing." She further alleged that "Disney continued to deny any wrongdoing after the matter was brought to their attention and took no steps to recall the material." *Id.* at 1012.

In finding that the court had subject matter jurisdiction over plaintiff's claims, Judge Waters determined that the named plaintiff's actual damages were slight where plaintiff claimed economic loss types of damages and, potentially, mental anguish but that punitive damages, if awarded, would most likely exceed $50,000. *Id.* at 1012. Judge Waters noted that a punitive damage award would "not depend on the underlying cause of action or the injury actually suffered by plaintiff, but instead [would] depend upon the defendant's conduct."

Under the facts in *Gilmer*, the Court would agree that punitive damages should be aggregated for the purpose of determining the amount in controversy. There, defendant was alleged to have engaged in one specific course of conduct-producing, distributing and marketing the subject videos for "family" viewing despite knowledge that they contained inappropriate material which, for the most part, resulted in the same or similar economic losses to the plaintiffs in addition to any mental anguish claimed by individual class members. Thus, it could be accurately asserted that the failure of any one plaintiff's claim would not affect the overall size of a punitive damages award.

However, the instant case presents quite a different situation. Here, plaintiff seeks compensatory and punitive damages under the Arkansas Civil Rights Act,[1] as well as

---

**1.** Section 16–123–107(b) of the Act provides that "[a]ny person who is injured by an inten-

common-law theories of recovery, for defendants' alleged discrimination against, and harassment of, non-white persons seeking accommodation at defendants' motels.

The named plaintiff alleges that defendants discriminated against him by initiating an intrusive and unnecessary background check on him after he registered at their motel in North Little Rock, Arkansas and by having him wrongfully arrested. However, the claims of the putative class members will likely vary extensively from claims of outright denial of rooms based on race to provision of inferior rooms or charging of inflated rates based on race, with or without accompanying acts of harassment. Thus, the range of injuries claimed by plaintiffs, and egregiousness of the alleged conduct of defendants, asserted in support of a punitive damage award will vary accordingly. As the court in *Visintine,* 891 F.Supp. 496 (E.D.Mo.1995), stated in determining not to aggregate punitive damages in that case, here,

> the Court does not believe it can be said that class members seeking punitive damages are seeking to enforce "a single title or right in which [they] have a common and undivided interest," where ... they do not have such an interest in the underlying actual damages. Rather, their claims for punitive damages are as separate and distinct as their claims for actual damages.

*Id.* at 498. The Eighth Circuit, in reviewing punitive damages awards in the civil rights/discrimination context, has considered such damages as separate and distinct for each plaintiff. *See, e.g., E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 556–57 (8th Cir.1998) (evidence of nature and extent of discrimination against, and compensatory damages awarded, each complainant considered in determining appropriate amounts of punitive damages to be award-

ed each complainant). *cf. Dean v. Olibas,* 129 F.3d 1001 (8th Cir.1997) (malicious prosecution case) (noting degree of reprehensibility of defendant's conduct and punitive damages award's ratio to the actual harm inflicted on the plaintiff as significant factors for determining reasonableness of punitive damages award).

Thus, the Court finds that punitive damages should not be aggregated for the purpose of determining whether the named plaintiff meets the amount in controversy requirement for diversity jurisdiction. The Court finds that defendants have not established to a total certainty that any punitive damages award in favor of plaintiff Williams would exceed $75,000.

Moreover, in making the conclusory assertion that jurisdiction exists because plaintiff claims punitive damages on behalf of the class, defendants have not in any way established, either by a preponderance of the evidence or to a total certainty, that punitive damages would exceed $75,-000, even if aggregated. *See Gilman v. BHC Securities,* 104 F.3d 1418, 1428 (2d Cir.1997) (criticizing defendant's conclusory prediction as to amount of punitive damages that plaintiffs would claim).

Based on the foregoing, the Court finds that defendants have not established an amount in controversy exceeding $75,000 as necessary to invoke this Court's diversity jurisdiction on removal.

Accordingly, plaintiff's Motion for Remand (doc. # 12) should be, and hereby is, granted. The Clerk is directed to take all actions necessary to remand the above-styled action to Pulaski County Circuit Court.

All remaining pending motions are hereby denied as moot.

---

tional act of discrimination ... [including discrimination in enjoyment of public accommodations] shall have a civil action ... to recover compensatory and punitive damages ...." Section 16–123–106(b) of the Act pro-

vides, with regard to alleged "hate offenses", that "[a]ny aggrieved party who initiates and prevails in an action authorized by this section shall be entitled to damages, including punitive damages ...."