891 F.Supp. 496 (1995)
Thomas R. VISINTINE, on behalf of himself and all others similarly situated, Plaintiff,
v.
SAAB AUTOMOBILE A.B., et al., Defendants.
No. 4:95CV00699 GFG.
United States District Court, E.D. Missouri, Eastern Division.
July 13, 1995.
John J. Carey, Joseph P. Danis, Carey and Danis, St. Louis, MO, for Thomas R. Visintine.
David M. Harris, Greensfelder and Hemker, St. Louis, MO, for SAAB Auto., AB., SAAB Cars USA, Inc. and General Motors Corp.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on plaintiff's motion to remand. On March 22, 1995, Thomas R. Visintine, a Missouri resident, filed this action in Missouri state court on behalf of himself and all other residents of the United States who own Saab 9000 vehicles *497 for model years 1986-1991. The putative class consists of over 50,000 members. Defendants are the designer and manufacturer, Saab Motor Cars USA, Inc., a Connecticut corporation; and the distributor, Saab Automobile, AB, also a diverse party.[1]
The complaint alleges that there was a defect in the electrical system of the vehicles in question, that defendants knew of the defect and purposely destroyed company records which identified the defect. Count I is brought under the Missouri Merchandising Practices Act, Mo.Rev.Stat. § 407.025, and seeks actual damages (diminished value of vehicle and/or cost of repair), punitive damages and attorney's fees. Counts II through VIII assert state law claims of breach of warranties, negligence, fraud, strict liability and conspiracy.
Count IX seeks punitive damages of an unquantified amount, and Count X seeks equitable relief including orders requiring Saab to disgorge for the benefit of the class all or part of its profits received from the sale of the vehicles in question, to notify all class members of the alleged defect and to make all necessary repairs. The complaint states that the total in actual and punitive damages sought by the named plaintiff and each individual putative class member is under $50,000. Excluded from the putative class are all persons with claims for personal injury.
Defendants removed the case to this Court under 28 U.S.C. § 1441 on the ground that diversity jurisdiction as defined by 28 U.S.C. § 1332 existed. There is no dispute that the diversity of citizenship requirement of § 1332(a) is met. With regard to the requirement that the amount in controversy exceed $50,000, defendants assert that the punitive damages sought by the class members may be aggregated, thereby satisfying this requirement. Defendants argue alternatively that each class member meets the jurisdictional amount because of the attorney's fees sought in Count I. Lastly, defendants argue that at least one class member meets the jurisdictional amount and that this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the other claims. For remand, plaintiff argues that in a class action neither punitive damages nor attorney's fees can be aggregated to arrive at the jurisdictional amount.
Here defendants, as the removing parties, have the burden of proving the jurisdictional amount; to do so, they must show that it appears to a "legal certainty" that the amount in controversy exceeds $50,000. See Fountain v. Black, 876 F.Supp. 1294, 1297 (S.D.Ga.1994); Dollar v. General Motors Corp., 814 F.Supp. 538, 543 (E.D.Tex.1993); cf. Allison v. Sec. Benefit Life Ins. Co., 980 F.2d 1213 (8th Cir.1992) ("legal-certainty" test applied to defendant seeking dismissal of diversity action on ground that plaintiff's claim did not meet jurisdictional amount); Missouri ex rel. Pemiscot County v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir.1995) (same).[2]
In determining the amount-in-controversy, both punitive damages and attorney's fees are considered. Allison, 980 F.2d at 1215 (punitive damages); Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992) (attorney's fees). The Supreme Court has held, however, that the rule that multiple plaintiffs in a regular joint action must each meet the jurisdictional amount unless they "unite to enforce a single title or right in which they have a common and undivided interest," applies equally to a Rule 23(b)(3) class action.[3]Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969).
The Supreme Court cited Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911), as an early case setting *498 forth this interpretation of "amount-in-controversy." Id. at 336, 89 S.Ct. at 1057. In Troy Bank, the Court held that in a suit filed jointly by two plaintiffs to enforce a vendor's lien, the value of the lien was the amount in controversy because the lien was "a single thing or entity in which the plaintiffs have a common and undivided interest, and which neither can enforce without the other." Troy Bank, 222 U.S. at 41, 32 S.Ct. at 9.
Snyder involved two actionsone by shareholders against the board of directors of a corporation for the excess value of stock sold by the directors for less than market value, the excess to be distributed among all shareholders; the other by customers of a gas company for recovery of overpayments. No member of either class individually met the jurisdictional amount, and because neither case involved an effort to enforce a "single title or right" in which the class members had a "common and undivided interest," the class members could not aggregate their claims to arrive at the jurisdictional amount.
The Court explained that the amount-in-controversy requirement must be strictly construed so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under control. Id. at 339, 89 S.Ct. at 1058.
In Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court extended Snyder to cases in which the named plaintiffs met the jurisdictional amount, but the other class members did not. Because the class members, owners of lakefront property suing an alleged polluter of the lake, had "separate and distinct amount," and those plaintiffs that did not meet the amount had to be dismissed. Id. at 301, 94 S.Ct. at 512.
Neither Snyder nor Zahn speaks in terms of actual damages as opposed to punitive damages, attorney's fees or injunctive relief, and a split of authority has emerged on the question of aggregation with regard to these forms of relief. The Court has found two appellate cases, Lindsey v. Alabama Telephone Co., 576 F.2d 593 (5th Cir.1978), and Snow v. Ford Motor Co., 561 F.2d 787 (9th Cir.1977), which did not allow aggregation of punitive damages where the class members' claims for actual damages could not be aggregated. Neither case has a separate discussion on punitive damages. The Eighth Circuit has not yet ruled on the issue.[4]
Upon careful consideration, the Court does not believe it can be said that class members seeking punitive damages are seeking to enforce "a single title or right in which [they] have a common and undivided interest," where, as here, they do not have such an interest in the underlying actual damages. Rather, their claims for punitive damages are as separate and distinct as their claims for actual damages. See, e.g., Pierson v. Source Perrier, S.A., for punitive damages are as separate and distinct as their claims for actual damages. See, e.g., Pierson v. Source Perrier, S.A., 848 F.Supp. 1186 (E.D.Pa.1994) (members of putative class in action against product manufacturer for false advertising held separate and distinct interest in any punitive damages award; focus is not upon type of relief sought, but upon nature of rights asserted); Bassett v. Toyota Motor Credit Corp., 818 F.Supp. 1462 (S.D.Ala.1993) (same as to punitive damages sought in class action against automobile finance company for force-placing insurance coverage).[5]
*499 The Court believes that those cases holding otherwise are based on erroneous tests for what constitutes a "single title or right" in "a common and undivided interest" suitable for aggregation. In Lailhengue v. Mobil Oil Corp., 775 F.Supp. 908 (E.D.La.1991), the court found that class members could aggregate their punitive damages claims arising out of an explosion at defendant's oil refinery, based on the following theories: "An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased;" "all plaintiffs have a collective interest in the creation of a fund sufficient to punish and deter any alleged misconduct on the part of the defendant;" "plaintiffs' right to punitive damages arises from a single event or act of conduct by the defendant." Id. at 911-14; see also, e.g., Martin v. Granite City Steel Corp., 596 F.Supp. 293, 295 (S.D.Ill.1984). This is clearly not what the Supreme Court had in mind in Snyder and Zahn, which are based on cases such as Troy Bank. Furthermore, to hold that punitive damages could be aggregated even where actual damages could not would eviscerate the holdings of Snyder and Zahn and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate.
Similarly, the Court believes that nonaggregation applies to attorney's fees, see Goldberg v. CPC Int'l, Inc., 678 F.2d 1365 (9th Cir.) (rejecting common-fund theory as undermining and contrary to Zahn), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), and Mayo v. Key Fin. Servs., Inc., 812 F.Supp. 277 (D.Mass.1993); disgorgement of profits, see Pierson v. Source Perrier, S.A., 848 F.Supp. at 1188; and the other equitable relief sought, see Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 (3rd Cir.) (for purposes of amount-in-controversy, value of equitable relief sought  requiring bank to notify trust beneficiaries of fees charged and to tie future fees to cost of providing service  determined from viewpoint of plaintiffs not defendant), cert. denied, ___ U.S. ___, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993), and Snow v. Ford Motor Co., 561 F.2d at 790; cf. Massachusetts Pharmaceutical Ass'n v. Federal Prescription Serv., Inc., 431 F.2d 130 (8th Cir.1970) (amount-in-controversy of injunctive relief in unfair competition action is tested by value of claim to plaintiffs; aggregation issue not reached because class members failed to establish requisite amount either individually or collectively).
Defendants' alternate argument that Zahn has been effectively overruled by the recently-enacted supplemental jurisdiction statute, 28 U.S.C. § 1366, see In re Abbott Labs., 51 F.3d 524 (5th Cir.1995), is not helpful because it has not been shown to a legal certainty that the claim of any plaintiff, even including his/her share of punitive damages, attorney's fees and injunctive relief, exceeds $50,000. Thus the Court need not decide whether or not to follow the Fifth Circuit on this issue. See Fountain v. Black, 876 F.Supp. at 1298-99.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion to remand is granted.
NOTES
[1] General Motors Corporation, named as a defendant, has been voluntarily dismissed from the suit without prejudice.
[2] The Court notes that in their memorandum in opposition to plaintiff's motion to remand, defendants misstate this burden by arguing that "it cannot be said with legal certainty that Plaintiff's claims will not exceed $50,000." (Memo. at 1).
[3] While a class has not yet been certified in this action, the Court may treat the suit as a class action for the purpose of ascertaining federal jurisdiction. See In re Abbott Labs., 51 F.3d 524, 525 n. 1 (5th Cir.1995); Fountain v. Black, 876 F.Supp. at 1297 n. 5.
[4] Plaintiff argues that in Allison v. Security Benefit Life Ins. Co., 980 F.2d 1213, the Eighth Circuit held that punitive damages may not be aggregated. It is clear, however, that the Court did not reach the issue, having concluded that punitive damages were not recoverable on the facts alleged by plaintiffs.

Here the Court has scrutinized the complaint as directed in State ex rel. Pemiscot County, 51 F.3d at 173, and concludes that putative plaintiffs have valid claims for such damages. See Carpenter v. Chrysler Corp., 853 S.W.2d 346 (Mo. Ct.App.1993) (evidence that automobile dealership concealed information from purchaser concerning repairs made on automobile, sufficient to support award of punitive damages in favor of purchasers on their claims for economic loss based on fraud and breach of warranty).
[5] Although the Court believes that this is essentially a question based on the interpretation of the statutory phrase "amount-in-controversy," see Snyder, 394 U.S. at 336, 89 S.Ct. at 1057, the Court notes that its conclusion is supported by the fact that under Missouri law, a reasonable relationship is required between the amount of punitive damages awarded and the injury inflicted and cause thereof. Carpenter v. Chrysler Corp., 853 S.W.2d 346, 366 (Mo.Ct.App.1993).