Joyce A. GREEN, etc., Plaintiff,

v.

H&R BLOCK, INC., et al., Defendants.

Civil No. AMD97–3037.

United States District Court,
D. Maryland.

Nov. 18, 1997.

Charles J. Piven, Claire E. Rooney, Baltimore, MD, for Plaintiff.

Louis J. Ebert, Gebhardt & Smith, Baltimore, MD, N. Louise Ellingsworth, Nicholas L. DiVita, Bryan Cave, L.L.P., Kansas City, MO, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

Pending before the court is plaintiff's motion to remand this action to the Circuit Court for Baltimore City, from which defendants timely removed the case to this court. The issues have been fully briefed, and no hearing is necessary. Local Rule 105.6 (D.Md.1997). For the reasons set forth herein, I shall grant the motion for remand.

(i)

As filed in state court, the complaint seeks class action status under Maryland law. It alleges that the defendants are liable to members of the putative class for violations of the Maryland Consumer Protection Act, Comm. Law Code § 13–101 *et seq.*, and myriad common law claims, including breach of fiduciary duty, fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing and civil conspiracy. The action arises out of the operation of a financial service the Block companies provided to its tax preparation customers which was known as the refund anticipation loan program (the "RAL"). The RAL permits a consumer to borrow funds in the amount of the consumer's expected federal income tax refund. Plaintiff alleges that Block operated the RAL pursuant to a scheme to deceive low and middle–income taxpayers into paying unnecessary fees and high finance charges for short–term loans and check–cashing services. In particular, plaintiff alleges that Block breached its fiduciary responsibilities to its tax preparation clients by accepting fees from the lending banks, which plaintiff suggests are kickbacks, for every RAL that Block arranges, and for steering customers to check–cashing services, wherein defendants would receive an undisclosed fee for each check cashed. An unspecified amount of compensatory and punitive damages are sought on behalf of the class of persons Green purports to represent.

This action is one of a series of such actions that have been filed in state and federal courts throughout the country. It appears that, typically, Block and its affiliated companies are sued in state court on state law causes of action, while the claims against the participating banking institutions that actually fund the loans are filed in federal court under different legal theories, including the National Bank Act, 12 U.S.C. § 21 *et seq.* *(See Cades v. H & R Block, Inc.,* 43 F.3d 869 (4th Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Haese v. H & R Block, Inc.,* Civ. Act. No. C–97–356 (S.D.Tex.); *Meyer v. H & R Block, Inc.,* Civ. Act. No. CV 197–96 (S.D.Ga.); *Carnegie v. H & R Block, Inc.,* No. 97 Civ. 0078(MGC)(S.D.N.Y.); *Buford v. H & R Block, Inc.,* Civ. Act. No. 495–268 (S.D.Ga.); *Christianson v. Beneficial Nat. Bank,* Civ. Act. No. 597–46 (S.D.Ga.)).

(ii)

Defendants removed the case to this court on the alternative bases of diversity of citizenship jurisdiction and federal question jurisdiction pursuant to 28 U.S.C. §§ 1441(a) & (b), 1446. The issues framed by the motion to remand and defendants' opposition thereto are:

(1) whether the complaint demonstrates that plaintiff's claims satisfy the amount–in–controversy requirement of the federal diversity of citizenship statute, notwithstanding the request for only unspecified compensatory and punitive damages, and irrespective of whether the punitive damage claim is deemed to be alleged individually by the named plaintiff, or in the aggregate on behalf of all members of the putative class; and

(2) whether the complaint asserts claims which are (a) necessarily dependent upon an interpretation of the National Bank Act, or (b) completely preempted by that statute, such that plaintiff's ostensible state claims in reality constitute "artfully plead" federal claims, and thus, in either event, arise under federal law.

I shall consider these contentions in turn. As explained below, I conclude that the case is not removable on any of the grounds asserted by defendants. In remanding the case at bar, I follow the lead of every other federal district court which has considered Block's efforts to leverage federal jurisdic-

tion out of class action claims asserted by similarly situated plaintiffs suing under other states' laws.

### (iii)

■ The removal statutes are to be strictly construed, and all doubts are to be resolved against removal. *Prevas v. Checkmate Investigative Services, Inc.,* 951 F.Supp. 568, 569 (D.Md.1996); *see* 14A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure,* § 3721 at 216–217, n. 88, 89 (1987) (collecting cases). The defendants, as the parties asserting federal jurisdiction, bear the burden of proving that the case is properly in federal court. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). As to diversity of citizenship jurisdiction, where it appears to a legal certainty that the claim is not in excess of the statutory jurisdictional amount, subject matter jurisdiction is absent. *Kessler v. Home Life Ins. Co.,* 965 F.Supp. 11, 12 (D.Md.1997). Where, as in the case at bar, a plaintiff makes an unspecified demand for damages in a state court, a removing defendant must make a prima facie showing that the amount in controversy satisfies the jurisdictional requirement. *Gilman v. Wheat, First Securities, Inc.,* 896 F.Supp. 507, 509 (D.Md.1995).

■ For purposes of federal question subject matter jurisdiction, a case arises under federal law when federal law creates the cause of action or when an essential element of the plaintiff's erstwhile state cause of action depends upon the validity, construction, or effect of federal law for its resolution. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983).

### (iv)

■ Defendants contend that plaintiff is seeking an award of punitive damages which,

although unquantified in the complaint, necessarily exceeds the jurisdictional amount under 28 U.S.C. § 1332(a). Specifically, defendants contend that even if, to a legal certainty, the named plaintiff has no individual claim for more than $75,000 in punitive damages, nevertheless, the class claim for punitive damages satisfies the jurisdictional amount requirement.[1] Thus, the parties have joined issue over whether, in a putative class action, putative class members may aggregate their individual claims for punitive damages (or, for removal purposes, whether they should be deemed to have done so) and thereby satisfy the jurisdictional amount requirement as to claims asserted under state law.

It has long been the rule that multiple plaintiffs may not add together "separate and distinct demands, unite[d] for convenience and economy in a single suit" to satisfy an amount–in–controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973)(internal quotations omitted); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In *Zahn,* the Court specifically held that in a Fed.R.Civ.P. 23(b)(3) class action, every member of the plaintiff class must satisfy the amount–in–controversy requirement. 414 U.S. at 301, 94 S.Ct. at 511; *but see Gilman,* 896 F.Supp. at 509, n. 5.

A corollary to the *Zahn* rule is that aggregation is permissible to meet the amount–in–controversy requirement where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056. In the case at bar, defendants rely on cases from the two circuits which, on a "common fund" rationale, have allowed the aggregation of class claims for punitive damages. *See Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1359 (11th Cir.1996); *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.), *reh'g and reh'g en*

---

1. Defendants seem to argue cursorily and conclusorily that the named plaintiff could be deemed to have asserted a claim for punitive damages which, though unquantified, exceeds the jurisdictional minimum. Defendants make no effort whatsoever, however, to develop this contention in their lengthy memorandum in opposition to the motion to remand, and I regard the contention as having been abandoned, if asserted at all. Thus, as is reflected in the defendants' memorandum, I treat only the contention that the undifferentiated and unquantified claim for punitive damages is properly viewed as a claim asserted on behalf of the class, and not as an individual claim asserted by Green.

*banc denied,* 70 F.3d 26 (5th Cir.1995)(per curiam). Significantly, however, both the Eleventh Circuit and the Fifth Circuit have limited their holdings to Mississippi and Alabama law, respectively.[2] Accordingly, I am not persuaded that I should follow them; rather, I am persuaded that the soundly reasoned analysis of the Second Circuit— together with the reasoning of lower federal courts which anticipated the Second Circuit's resolution of this issue—should guide my determination in this case arising under the law of Maryland.

In *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418 (2d Cir.1997), the court held that the "common fund" rationale does not support the aggregation of punitive damage claims absent a prior determination that the underlying claim—the basis on which such damages are sought—asserts a single title or right. *Id.* at 1429; *see also Visintine v. Saab Automobile A.B.,* 891 F.Supp. 496, 498 (E.D.Mo.1995)("[T]he Court does not believe it can be said that class members seeking punitive damages are seeking to enforce 'a single title or right ...' where, as here, they do not have such an interest in the underlying actual damages. Rather, their claims for punitive damages are as separate and distinct as their claims for actual damages."); *Bernard v. Gerber Food Products Co.,* 938 F.Supp. 218, 223 (S.D.N.Y.1996) (where class members' false advertising claims "derive from the individual injury each plaintiff suffered" and those "injuries do not constitute a 'common and undivided interest,'" the plaintiffs' punitive damages, like their other damages, "must be determined individually and cannot be aggregated"); *Haisch v. Allstate Ins. Co.,* 942 F.Supp. 1245, 1250 (D.Ariz.1996) (declining to aggregate punitive damages claims, where underlying claim alleged refusal to pay insureds' medical expenses, because

"each class member's claim for punitive damages is derived from conduct on the part of Defendant that allegedly injured each class member separately and individually").

The *Gilman* court reasoned as follows:

[Plaintiff] and the putative class members may indeed share an interest in receiving damages, but that has nothing to do with whether—prior to litigation—they jointly held a single title·or right in which each possessed a common and undivided interest. It is irrelevant whether successful vindication of claims would create a single pool of recovery to be allocated among multiple plaintiffs; a common interest in a pool of funds is not the type of interest that permits aggregation of claims under the "common fund" doctrine. *See Visintine,* 891 F.Supp. at 499 (to hold that " 'all plaintiffs have a collective interest in the creation of a fund sufficient to punish and deter any alleged misconduct on the part of the defendant' ... is clearly not what the Supreme Court had in mind in *Snyder* and *Zahn* ").

\* \* \* \* \* \*

[P]unitive damages asserted on behalf of a class may not be aggregated for jurisdictional purposes where, as here, the underlying cause of action asserted on behalf of the class is not based upon a title or right in which the plaintiffs share, and as to which they claim, a common interest. To hold otherwise, and aggregate punitive damages even when the actual damages could not be aggregated, 'would eviscerate the holding of *Snyder* and *Zahn* and would run counter to the strict construction of the amount–in–controversy requirement those cases mandate.'

*Id.* at 1430–31 (quoting *Visintine,* 891 F.Supp. at 499); *see also Haisch,* 942 F.Supp. at 1251.

---

**2.** The Eleventh Circuit expressly limited its decision in *Tapscott:* "Our holding in this case is not to be taken to establish a bright line rule that any class claim for punitive damages may be aggregated to meet the amount–in–controversy requirement." 77 F.3d at 1359. While concluding that the facts in that case warranted aggregation, the court made clear that "other factual situations may dictate that punitive damages are non-aggregable," and indicated that one such situation might be where punitive damages "would be determined on an individualized consideration of

the egregiousness of the harm done to individual class members." *Id.* at 1359.

The Fifth Circuit denied rehearing and rehearing en banc in *Allen,* but in so doing it explicitly qualified its earlier holding: "[T]he panel is of the unanimous view that the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state." *Allen v. R & H Oil & Gas Co.,* 70 F.3d 26 (5th Cir.1995) (per curiam).

It is unlikely that the Fourth Circuit would adopt the reasoning of *Tapscott* and *Allen;* rather, it is likely that the Fourth Circuit would apply a *Gilman* analysis. The court in *Gilman* distinguished the law of punitive damages in New York from the law in both Mississippi and Alabama. In New York, a plaintiff cannot recover punitive damages unless she asserts an underlying cause of action upon which a demand for punitive damages can be grounded; there can be no separate cause of action for punitive damages. Similarly, the Maryland rule is that punitive damages may not be awarded absent compensatory damages. *Exxon Corp. v. Yarema,* 69 Md.App. 124, 138, 516 A.2d 990 (1986) (collecting cases). Thus, this case may not be removed on the basis of diversity of citizenship, because the named plaintiff's claim does not satisfy the jurisdictional amount requirement, and in light of the separate and distinct claims *ex delicto* asserted on behalf of the putative class members, the class claims for punitive damages may not be aggregated to satisfy the jurisdictional amount requirement.

(v)

Defendants assert, in the alternative, that federal question jurisdiction supports their removal in the case at bar. They have crafted a lengthy and intricate, if not tortuous, series of arguments, a reprise of arguments made and rejected in earlier cases brought by similarly situated RAL participants in Georgia and Texas, in an effort to convince me that, as a matter of law, plaintiff's claims arise under the National Bank Act, 12 U.S.C. § 21 *et seq.,* ("NBA"). The earlier courts which have examined defendants' contentions in these regards have rejected them out of hand, and I, too, conclude that these arguments are unavailing.

■ The first strand of the defendants' arguments proceeds on the theory that because the plaintiff alleges that the Block companies are "coconspirators," "agents" and "partners" of the national banking institutions which provided the funds constituting the proceeds of the unconscionable loans, and further, are alleged to be "creditors" of the putative class members in respect to the disputed loans, that the claims necessarily arise under the NBA's violation–of–interest–rate provisions. In other words, the argument is that plaintiff's claims of agency and concerted action pose questions of interpretation of the NBA, and therefore the claims arise under the NBA.

■ The second strand of defendants' arguments is a more straightforward assertion that the NBA completely preempts any state law claim relating to alleged excessive interest charged or collected on loans made by national banks. Thus, according to defendants, to the extent that the plaintiff's claims seek recovery for, or are based upon, the rate of interest on the loans she and others agreed to, plaintiff's seeming state law claims are really federal claims hidden by "artful pleading" designed to obscure the genuine nature of plaintiff's claims.

■ Defendants' arguments are unpersuasive. The NBA regulates only the business of banking. *See Wiley v. Fed. Land Bank of Louisville,* 657 F.Supp. 964, 965 (S.D.Ind. 1987) ("The National Bank Act regulates only the conduct of national banks."); *Criswell v. Production Credit Ass'n,* 660 F.Supp. 14, 16 (S.D.Ohio 1985) ("It is well settled that the National Bank Act regulates only the conduct of national banks."); *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 687 (E.D.Pa.1973) ("The National Bank Act, 12 U.S.C. § 21 et seq., regulates national banks and only national banks."). The defendants are not banking associations, and they have provided no persuasive support for their claim which would place this matter within the purview of the NBA. There is no support for the proposition that an entity that acts in concert with, or is in privity with, a national bank is entitled to remove state claims to federal court under the NBA. Nor does plaintiff seek relief for usury, even if she had sued a national banking institution, which she has not. Rather, the gravamen of all of plaintiff's claims is the alleged fiduciary duty owed by defendants to plaintiff and to members of the putative class. Accordingly, this case may not be removed on the basis of federal question jurisdiction.[3]

---

**3.** Although federal district courts have consistently and unfailingly remanded these cases, de-

fendants insist upon making the unfounded ar-

(vi)

For the reasons stated above, an order shall be issued remanding this case to the Circuit Court for Baltimore City.

gument that plaintiffs characterizations of its activities support federal question jurisdiction. Plaintiff thus asks for attorney's fees, alleging that defendants frivolously removed this suit. Defendants did raise a non–frivolous question of law relating to the aggregation of punitive dam-age claims, however, and accordingly, an award of attorney's fees is not warranted. No question presented warrants certification by this court of an interlocutory appeal; accordingly, defendants' request for such certification is denied.