Richard CARRICK, Plaintiff,

v.

SEARS, ROEBUCK AND CO., Defendant.

No. CIV.A.3:02–CV–2276.

United States District Court, M.D. Pennsylvania.

March 17, 2003.

Joseph P. Coviello, Coviello & Mariotti, Scranton, PA, Joseph E. Mariotti, Mariotti Law Offices, P.C., Scranton, PA, Todd J. O'Malley, Scranton, PA, Ira Neil Richards Trujillo, Kenneth I. Trujillo, Peter D. Winebrake, Rodriguez & Richards, LLC, Phil-

adelphia, PA, Philadelphia, PA for Richard Carrick.

Douglas R. Cox, Washington, DC, F. Joseph Warin, Gibson Dunn & Crutcher, LLP, Washington, DC, Andrew S. Tulumello, Gibson, Dunn & Crutcher LLP, Washington, DC for Sears, Roebuck & Co., Inc.

### MEMORANDUM

CAPUTO, District Judge.

Plaintiff Richard Carrick filed a complaint in the Court of Common Pleas of Lackawanna County on November 21, 2002 against Defendant Sears, Roebuck and Co. alleging various state law claims.[1] Defendant removed the action to federal court. (Doc. 1.) Defendant filed a motion to dismiss. (Doc. 2.) Plaintiff subsequently filed a motion for remand to state court. (Doc. 8.) The Court heard oral arguments on February 24, 2003. This matter has been fully briefed and is ripe for disposition. Because the Court finds that Defendant has not satisfied the amount-in-controversy requirement, the Court will grant Plaintiff's motion to remand. Defendant's motion to dismiss will be denied as moot.

### BACKGROUND

This case concerns the rates that Sears charges customers for alignment services. According to the complaint filed in state court, Plaintiff took his Chevrolet S–10 Blazer to Sears for an alignment. Plaintiff's Blazer, like many SUVs and pick-up trucks, is designed so that the rear wheels cannot be adjusted. Aligning a Blazer involves adjusting only the front wheels. Sears charged Plaintiff $49.99 for what the invoice referred to as an "all wheel" alignment. This is the same price Sears

---

1. This matter was docketed in the Court of Common Pleas of Lackawanna County as Civil Action No. 02–6232.

charges customers whose vehicles require adjustment of all four wheels.

Plaintiff argues that Sears is essentially charging customers with vehicles requiring adjustment of only the front two wheels for work that is not done; *viz.*, adjustment of the back wheels. Plaintiff states in his state court complaint that he seeks to become representative of a class consisting of:

> all customers of Defendant's Auto Centers who, since November 1996, received wheel alignments on vehicles that were mechanically incapable of having their rear wheel alignments adjusted and were nevertheless charged by Defendant's Auto Centers for an "all wheel" or four-wheel alignment.

(Pl.Compl., ¶ 31.) This case has not been certified. It remains a "putative" class action.

Plaintiff brings action under the common law theories of breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. Plaintiff also brings action under 73 PA. STAT. ANN. § 201–9.2, which authorizes a private right of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. In addition to seeking class certification, Plaintiff's complaint demands declaratory and injunctive relief, statutory damages under § 201–9.2, monetary damages pursuant to the common law contract theories, punitive damages, and attorneys' fees.[2]

## DISCUSSION

### A. *Jurisdictional Questions Addressed First*

■ Plaintiff, in his motion to remand, calls into question the Court's subject mat-

ter jurisdiction over this case. (Doc. 8.) A federal court cannot address a case's merits without first determining that it has subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). *See also Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir.1995) (federal courts have an "ever-present obligation to satisfy themselves of their subject matter jurisdiction"). Therefore, the Court addresses the motion to remand first.

### B. *Requirements For Removal*

Defendant removed on the basis of diversity jurisdiction. Removal on this basis requires: (1) diversity of citizenship, and (2) an amount in controversy exceeding $75,000. Neither party disputes the diversity of citizenship. The sole jurisdictional question is whether the amount-in-controversy requirement has been satisfied.

### C. **Standard For Determining if Removal Was Proper**

■ When deciding whether removal of a case from state court is proper, it is important to recognize the basic principle that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Chase Manhattan Bank (Nat'l Asso.) v. South Acres Dev. Co.*, 434 U.S. 236, 239–40, 98 S.Ct. 544, 54 L.Ed.2d 501 (1978). Courts must strictly construe all removal statutes and resolve doubts about removal jurisdiction in favor of remand.[3] The Court of

---

**2.** *See* 73 PA. STAT. ANN. 201–9.2(a) ("[t]he court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees").

**3.** *See Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985); *Brewer v. Geisinger Clinic, Inc.*, 2002 WL 57259, 2002 U.S. Dist. LEXIS 459 at *7–12 (M.D.Pa. Jan.

Appeals for the Third Circuit recently cautioned against "relying exclusively" on the "supposed 'presumption' in favor of remand," calling this presumption a "questionable doctrine whose 'basis has never been very clearly explained.'" *Cook v. Wikler*, 320 F.3d 431, 436 n. 6 (3d Cir.2003) (*citing Thomas v. Shelton*, 740 F.2d 478, 488 (7th Cir.1984)). I interpret the appeals court's words to mean that, when considering motions to remand, courts should not allow adherence to the general presumption to justify the omission of a rigorous "analysis of the text and context of the [removal] statute." *Id.* Cook does not purport to abolish the long-standing presumption against federal jurisdiction, nor does *Cook* assert that this presumption lacks any basis in law or logic. *Compare Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996) ("[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand").[4] The burden of establishing federal jurisdiction rests upon the party asserting jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). *See also Ariel Land Owners v. Dring*, 245 F.Supp.2d 589 (M.D.Pa. 2003).

■ Moreover, a plaintiff is the master of his own claim. *Wilbur v. H & R Block, Inc.*, 170 F.Supp.2d 480, 481 (M.D.Pa. 2000) (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 & n. 7, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Although a defendant may remove a case to federal court in certain situations, a defendant's right to remove is not on equal footing with a plaintiff's right to choose his forum. *Wilbur*, 170 F.Supp.2d at 481. When a plaintiff chooses a state forum, and the defendant seeks to negate that choice by removing to federal court, the defendant bears the burden of establishing, by a preponderance of the evidence, that the case satisfies all of the jurisdictional requirements for removal. *See Wilbur*, 170 F.Supp.2d at 483; *Werwinski v. Ford Motor Co.*, 2000 WL 375260, 2000 U.S. Dist. LEXIS 4602 at *5 n. 1 (E.D.Pa. Apr. 11, 2000), *aff'd*, 286 F.3d 661 (3d Cir.2002); *McFadden v. State Farm Ins. Co.*, 1999 WL 715162, 1999 U.S. Dist. LEXIS 13956 at *1 (E.D.Pa. Sept. 13, 1999).[5] Therefore, in considering Plaintiff's motion to remand, the Court must determine whether Defendant has established by a preponderance of the evidence—*i.e.* it is more

15, 2002) (Vanaskie, C.J.); *Ogletree v. Barnes*, 851 F.Supp. 184, 186 (E.D.Pa.1994) (*citing Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990)).

4. *See also Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("[t]he power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'"); *St. Paul Mercury Indem. Co.*

*v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts").

5. Some district courts in the Third Circuit have applied an even more stringent requirement, requiring the removing defendant to establish to a "legal certainty" that the amount-in-controversy requirement is satisfied. *Deep v. Manufacturers Life Ins. Co.*, 944 F.Supp. 358, 360 (D.N.J.1996). Under either standard, the result in this case would be the same.

likely than not—that the amount in controversy exceeds $75,000.

### D. *Putative Class Actions Treated As Class Actions For Jurisdictional Purposes*

Plaintiff states in his state court complaint that he seeks class certification. (Pl.Compl., Doc. 1, ¶ 31.) However, no state or federal court has ruled on whether Plaintiff's case should be certified as a class action. Plaintiff's claim remains a "putative class action." [6] For the purposes of determining subject matter jurisdiction, federal courts analyze a putative class action as though it were, in fact, already certified. *Miller v. Bridgestone/Firestone Inc.*, 2000 WL 1570732, 2000 U.S. Dist. LEXIS 15292 at *5 n. 2 (E.D.Pa., Oct. 19, 2000); *Garcia v. General Motors Corp.*, 910 F.Supp. 160, 163–64 (D.N.J.1995); *In re Abbott Labs.*, 51 F.3d 524, 525 n. 1 (5th Cir.1995); *Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541, 545 n. 1 (9th Cir.1985).[7] When applying this rule, courts do not inquire into the likelihood that a court will eventually grant class certification. *See Knauer v. Ohio State Life Ins. Co.*, 102 F.Supp.2d 443, 446 (N.D.Ohio 2000).

### E. *Separate and Distinct Claims Not Aggregated*

 It is settled that separate and distinct claims of members of a class action cannot be aggregated to satisfy the jurisdictional amount-in-controversy requirement. *Snyder v. Harris*, 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218–22 (3rd Cir.1999); *McIntyre v. Nationwide Mut. Fire Ins. Co.*, 2001 WL 893697, 2001 U.S. Dist. LEXIS 11317 (E.D.Pa., August 6, 2001).[8] Each plaintiff in a class action must independently meet the amount-in-controversy requirement for a federal court to exercise diversity jurisdiction over his or her claim. *See Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).[9]

---

**6.** Pennsylvania Rule of Civil Procedure 1707(a) requires a plaintiff to move for certification of the class within 30 days of the date that the pleadings are closed or within 30 days of the date the last required pleading was due, PA. R. CIV. P. 1707(a), which Plaintiff had not done when Sears removed. Nor has Plaintiff filed a motion for class certification in federal court pursuant to Rule 23 of the Federal Rules of Civil Procedure. Thus, the class action remains "putative."

**7.** *See also City of Inglewood v. City of Los Angeles*, 451 F.2d 948, 951 (9th Cir.1971) ("it was proper for the district court to assume the suit was a class action in order to determine if it had jurisdiction, without first making the finding required by 23(c)(1)" and also proper for the appeals court to "likewise assume this was a class action until a contrary determination is made"); *Knauer v. Ohio State Life Ins. Co.*, 102 F.Supp.2d 443, 446 (N.D.Ohio 2000); *Visintine v. Saab Auto. A.B.*, 891 F.Supp. 496, 497 n. 3 (E.D.Mo.1995); *Fountain v. Black*, 876 F.Supp. 1294, 1297 n.

5 (S.D.Ga.1994); *Mayo v. Key Fin. Svcs., Inc.*, 812 F.Supp. 277, 278 n. 1 (D.Mass.1993); *Lailhengue v. Mobil Oil Corp.*, 775 F.Supp. 908, 911 (E.D.La.1991); *Craig v. Congress Sportswear, Inc.*, 645 F.Supp. 162, 163 n. 1 (D.Me.1986) (same).

**8.** An exception to the rule against aggregation of claims is made when a class is seeking to enforce a "single title or right" pursuant to a "common and undivided interest." *Zahn*, 414 U.S. at 295, 94 S.Ct. 505. This exception does not apply in the case at bar.

**9.** For a time there was dispute over whether 28 U.S.C. § 1367 partially overruled *Zahn* by permitting a federal court to exercise jurisdiction over plaintiffs in a class action who do not meet the amount-in-controversy requirement, so long as a class representative satisfies the jurisdictional amount. *See Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 n. 9 (3d Cir.1993). However, the Court of Appeals for the Third Circuit settled this debate in this Circuit by holding in *Meritcare, Inc. v. St.*

## F. Application of the Non–Aggregation Principle

■ The non-aggregation principle, established in *Snyder* and *Zahn*, compels the conclusion that when a plaintiff brings a putative class action in state court, and the defendant removes to federal court based on diversity jurisdiction, the federal court, in determining its own subject matter jurisdiction, must attribute unliquidated damages sought by the plaintiff (*viz.* attorneys' fees, punitive damages) *pro rata* to each member of the putative class. Dozens, if not hundreds, of decisions involving facts virtually identical to those in the case at bar have applied this principle. Courts have held, with a few isolated and readily distinguishable exceptions, that the non-aggregation principle requires *pro rata* attribution of unliquidated damages across the putative class. *See Medley v. Am. Int'l Ins. Co.*, 2001 WL 892793, 2001 U.S. Dist. LEXIS 11316 (E.D.Pa. Aug. 1, 2001); *Dorian v. Bridgestone/Firestone Inc.*, 2000 WL 1570627, 2000 U.S. Dist. LEXIS 15407 (E.D.Pa. Oct. 19, 2000); *Miller v. Bridgestone/Firestone Inc.*, 2000 WL 1570732, 2000 U.S. Dist. LEXIS 15292 (E.D.Pa. Oct. 19, 2000); *Beatty v. Bridgestone/Firestone Inc.*, 2000 WL 1570590, 2000 U.S. Dist. LEXIS 15406 (E.D.Pa. Oct. 19, 2000); *Lennon v. Bridgestone/Firestone Inc.*, 2000 WL 1570645, 2000 U.S. Dist. LEXIS 15405 (E.D.Pa. Oct. 19, 2000); *Robinson v. Computer Learning Ctrs.*, 1999 WL 817745, 1999 U.S. Dist. LEXIS 15753 (E.D.Pa. Oct. 12, 1999); *McNamara v. Philip Morris Cos.*, 1999 WL 554592, 1999 U.S. Dist. LEXIS 10855 (E.D.Pa. July 9, 1999); *Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339 (D.N.J.1998); *Bishop v. GMC*, 925 F.Supp. 294 (D.N.J.1996);[10] *Johnson v. Gerber Prods. Co.*, 949 F.Supp. 327 (E.D.Pa.1996); *Pierson v. Source Perrier, S.A.*, 848 F.Supp. 1186 (E.D.Pa.1994); *Goldberg v. CPC International, Inc.*, 678 F.2d 1365 (9th Cir.1982); *Gooding v. Allstate Ins. Co.*, 2000 WL 626856, 2000 U.S. Dist. LEXIS 6607 (N.D.Tex. May 12, 2000); *Mattingly v. Hughes Elecs. Corp.*, 107 F.Supp.2d 694 (D.Md.2000); *Crosby v. America Online*, 967 F.Supp. 257 (N.D.Ohio 1997); *Gilman v. Wheat, First Sec.*, 896 F.Supp. 507 (D.Md.1995); *Daniels v. Philip Morris Cos.*, 18 F.Supp.2d 1110 (S.D.Cal.1998); *Kasky v. Perrier*, 1991 WL 577038, 1991 U.S. Dist. LEXIS 21177 (S.D.Cal. Sept. 16, 1991).[11]

*Paul Mercury Ins. Co.*, 166 F.3d 214 (3d Cir. 1999) that § 1367 does not overrule *Zahn* and thus does not disturb its holding that *every class plaintiff* must satisfy the jurisdictional amount. *Id.* at 222. *Cf. Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001) (discussed *infra*).

**10.** In *Bishop*, the district court noted countervailing Eleventh Circuit authority, *viz. Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996) (punitive damages can be aggregated). However, the Court of Appeals for the Eleventh Circuit recently overruled *Tapscott*. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir.2000). Another decision suggesting that punitive damages can be aggregated, *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995), has been limited to apply only to cases arising under Mississippi law. *Allen v. R & H Oil & Gas Co.*, 70 F.3d 26 (5th Cir.1995).

**11.** One exception that the Court has located is the Court of Appeals for the Fifth Circuit's decision in *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995), in which the court held that attorneys' fees were properly attributable to the class representatives so as to satisfy the jurisdictional amount. *Id.* at 526. *Abbott*, however, has been widely criticized and distinguished by other courts, including district courts in Pennsylvania. One Pennsylvania district court noted that the *Abbott* court "relied upon [two specific Louisiana statutes which] expressly award[ ] attomeys' fees to the 'representatives' of a class and the injured parties." The court added that "because Pennsylvania law does not allocate attorneys' fees to class representatives, the Fifth Circuit

Against this background of virtually unanimous authority, the Court has carefully studied Defendant's briefs and appended cases, searching for authority to the contrary. The Court has found none. Therefore, I conclude that the non-aggregation principle, and the resulting *pro rata* attribution requirement, is the proper framework for analyzing the Court's jurisdiction over this putative class action.

### G. *Defendant's Position Contra to the Non–Aggregation Principle*

Defendant seeks to avoid the non-aggregation principle by pointing out that, at this stage in the litigation, Plaintiff "is the only party whose claims are properly before the Court." (Doc. 16 at 10.) It follows, by Defendant's reasoning, that "the amount in controversy must be determined from the named plaintiff's claims alone." (Doc. 16 at 10.) That is, Defendant argues that any discussion of attributing potential damages to other members of the plaintiff class *pro rata* "misses the mark" because that would mean "apportioning the named plaintiff's potential recovery to a class that is not now—and may never be—certified," something Defendant argues is improper and unwarranted.

■ This argument is without merit because it ignores the rule established in *Miller, Garcia, Abbott Labs, Eagle,* and the numerous other decisions cited above which hold that putative class actions, for the purpose of determining subject matter jurisdiction, are analyzed as though they were actually certified.[12] Applying this rule, the Court finds that it is completely appropriate to consider unnamed members of the putative class for jurisdictional purposes. Moreover, Defendant's argument fails to account for the voluminous body of precedent, only some of which is cited above, in which courts have applied the non-aggregation principle to cases that are virtually identical to the one currently before the Court.[13]

Defendant attempts to support its argument against the application of the non-aggregation principle by citing *Gibson v. Chrysler Corp.,* 261 F.3d 927, 940–41 (9th Cir.2001). However, reading the entire case, it is clear that *Gibson* is not only unhelpful to Defendant, but it actually supports Plaintiff's position.

*Gibson* is unhelpful because, while it states in dicta that courts should "[e]xamin[e] . . . only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions," *Gibson,* 261 F.3d at 941, the context reveals that this statement is irrelevant to the matter before the Court. In *Gibson,* the Court of Appeals for the Ninth Circuit considered whether a federal court has supplemental jurisdiction over class members whose claims fall short of the jurisdictional amount, provided that at least one **unnamed** member of the putative class satisfies the jurisdictional amount. The *Gibson* court held that there was no jurisdiction. Rather, for a federal court to have supplemental jurisdiction over class members whose claims were worth less than the jurisdictional amount, *Gibson* held that at least one **named** plaintiff's claim must satisfy the amount-in-controversy requirement.

---

case is neither controlling nor persuasive." *McNamara v. Philip Morris Cos.,* 1999 WL 554592, 1999 U.S. Dist. LEXIS 10855 at *6 (E.D.Pa.1999). *See also* 949 F.Supp. 327, 330 (E.D.Pa.1996) ("[a]bsent . . . a legislative directive, or a judicial one, I decline to adopt the [*Abbott* court's] position because I conclude that position is not consistent with the policy in this Circuit").

**12.** *See supra* n. 7 and accompanying text.

**13.** *See supra,* pp. 8–9 (collecting cases).

*Gibson* fails to support the proposition urged by Defendant, *viz.,* that in determining subject matter jurisdiction, a federal court must ignore all unnamed members of a putative class, even if the named plaintiff alleges the class's existence in his complaint and describes the class's membership. This is simply not what *Gibson* holds. It should also be noted that the *Gibson* rule on supplemental jurisdiction is inapposite in the Third Circuit because it is predicated upon the Court of Appeals for the Ninth Circuit's determination that, in passing 28 U.S.C. § 1367, Congress overruled the Supreme Court's decision in *Zahn* that every member of a class must independently satisfy the amount-in-controversy requirement in order for a federal court to exercise diversity jurisdiction. The Court of Appeals for the Third Circuit has taken the opposite view, holding that *Zahn's* vitality is unaltered by § 1367. *Meritcare, Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 222 (3d Cir.1999).

*Gibson* actually supports Plaintiff's position. *Gibson* came before the Court of Appeals for the Ninth Circuit as an appeal from the district court's decision to impose Rule 11 sanctions and assess attorneys' fees against a defendant who removed a case to federal court for a second time based on an argument virtually identical to the argument put forth by Defendant in the case at bar. *See Gibson v. Chrysler Corp.,* 1998 WL 646659, 1998 U.S. Dist. LEXIS 11343 (N.D.Cal. July 20, 1998) (remanding the case to state court), *aff'd by Gibson,* 261 F.3d 927 (9th Cir.2001); *see also Gibson,* 1999 WL 1049572, 1999 U.S. Dist. LEXIS 22305 (N.D.Cal. May 28, 1999) (imposing sanctions and assessing attorneys' fees), *aff'd in part, rev'd in part by Gibson,* 261 F.3d 927, 948–50 (9th Cir. 2001). Although the appeals court ultimately affirmed only the district court's imposition of attorneys' fees, and not Rule 11 sanctions, the court also confirmed that the district court was legally correct in applying the non-aggregation principle to potential compensatory and punitive damages and attributing these potential damages *pro rata* to all members of the putative class. *Id.* at 943–48.

*Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir.2002), relied upon heavily by Defendant at oral argument, is similarly unavailing. In *Werwinski,* the Court of Appeals for the Third Circuit affirmed the district court's decision to deny the plaintiff's motion to remand to state court a putative class action arising under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Although neither the district court nor the appeals court explicitly attributed unliquidated damages to the entire putative class *pro rata,* the Court has no doubt that this is what actually occurred. The appeals court held that the amount-in-controversy requirement was met in *Werwinski* because, first of all, the actual damages were $15,000 (*i.e.* the full purchase price of the vehicles at issue), which could be trebled pursuant to 73 Pa. Stat. Ann. § 201–9.2, putting the amount in controversy at $45,000. *Id.* at 664. The Court then found that reasonable attorneys' fees might total $5,000 to $10,000, and that a reasonable jury could award punitive damages that would push the total amount in controversy over the $75,000 threshold.

Although the appeals court never specifically mentioned that it was attributing the recoverable attorneys' fees and punitive damages to the entire class *pro rata,* common sense compels that conclusion. To conclude otherwise would be to assume that the appeals court believed that the recoverable attorneys' fees resulting from a successful, complex, large-scale class action lawsuit would total—for the entire action—no more than $10,000. That is simply not a reasonable assumption. Nor

is it reasonable to assume that the appeals court believed that potential punitive damages against Ford Motor Co. was limited to a figure on the order of $20,000. It is far more likely that the appeals court assumed a *pro rata* attribution without specifically mentioning it, concluding quite reasonably under the facts of the case that potential attorneys' fees were $5,000 to $10,000 *per member of the putative plaintiff class* and that punitive damages could reach or possibly exceed $20,000 *per member of the putative plaintiff class.*[14] This interpretation of *Werwinski* further supports the validity of the *pro rata* attribution rule.

In light of the overwhelming weight of authority in favor of Plaintiff's position, and the corresponding dearth of contrary authority, I hold that any punitive damages and attorneys' fees potentially recoverable in Plaintiff's putative class action must be attributed to each member of the putative class *pro rata.*

## H. *In Light of the Pro Rata Attribution Rule, Is the Amount–In–Controversy Requirement Satisfied?*

■ The decision that potential damages must be attributed to each member of the putative class *pro rata* does not dispose of the question of jurisdiction. The Court must take the next step and determine, in light of the *pro rata* attribution rule, whether Defendant has carried its burden of showing by a preponderance of the evidence that the amount-in-controversy requirement is met. I conclude that Defendant has not carried this burden.

■ Under his common law theories, Plaintiff's potential recovery could not exceed $49.99, which is what Plaintiff paid for the alignment service. Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Plaintiff would be entitled to either actual damages, statutory damages of $100, or treble damages in the court's discretion. 73 PA. STAT. ANN. § 201–9.1. These common law and statutory theories of recovery flow from the same alleged injury and therefore could not be aggregated for jurisdictional purposes. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir.1997). Under the most optimistic scenario in which Plaintiff's actual damages were deemed to be the full price of the alignment, the most Plaintiff could hope to recover in statutory damages amounts to less than $150 (*viz.*, the maximum possible actual damages, $49.99, trebled).

Plaintiff avers in his state court complaint that his putative class is composed of "thousands" of individuals in the Commonwealth of Pennsylvania. (Pl.Compl., ¶ 33.) Defendant does not dispute that the putative plaintiff class could number in the thousands, and the Court has no reason to doubt Plaintiff's good faith in making this allegation. Therefore, the Court will assume conservatively that the putative plaintiff class is composed of 1,000 individuals.

Looking only at compensatory damages recoverable under Pennsylvania law, Plaintiff remains $74,850 short of the jurisdictional amount. To make up this shortcoming, the Plaintiff's *pro rata* share of attorneys' fees and punitive damages would have to exceed $74,850. Assuming a class of 1,000 individuals, this means that

---

14. Considering the extensive precedent supporting the *pro rata* attribution rule, it is not surprising that the Court of Appeals for the Third Circuit found it unnecessary to spell out in detail that it was attributing attorneys' fees and punitive damages across the entire putative class *pro rata.* Conversely, if the Court of Appeals for the Third Circuit were, as Defendant suggests, jettisoning the well-established *pro rata* attribution rule, the Court would expect the court to mention this specifically.

the combined attorneys' fees and punitive damages assessed against Defendant would have to exceed $74,850,000. Even assuming that the attorneys' fees potentially recoverable at the end of this action could be quite high, the punitive damage component of the award would still have to be well over $70,000,000.

If Plaintiff is typical of the class he seeks to represent, the maximum recoverable statutory damages for the class as a whole would total $150,000. Even if some of the class members could recover more statutory damages than $150 (*i.e.* some may have purchased alignment services from Sears on numerous occasions), it is hard to imagine that the total recoverable statutory damages for the class as a whole would exceed $1,000,000. In order for the Court to find that the amount-in-controversy requirement is satisfied in this case, the Court would have to conclude that a reasonable jury could award punitive damages that were at least 70 times the amount of statutory damages (and on the order of 1,000 times the plaintiff class's actual damages).[15] Assuming *arguendo* that punitive damages would be recoverable at all in this case (beyond the treble damages authorized by 73 Pa. Stat. Ann. § 201–9.1(a)), the Court has no difficulty concluding on the facts alleged in Plaintiff's complaint that a punitive damage award of 70 times the statutory damages, or nearly 1,000 times the class's actual damages, would be excessive and impermissible as a matter of law. To put this in perspective, the court in *McFadden*, 1999 WL 715162, 1999 U.S. Dist. LEXIS 13956, refused to assume, for the purpose of assessing satisfaction of the jurisdictional amount in a class action, that punitive damages in the amount of four-and-one-half times the compensatory damages were possible under Pennsylvania's bad faith insurance law. *See id.* at *14, 1999 WL 715162. *See also Bell v. Preferred Life*, 320 U.S. 238, 243, 64 S.Ct. 5, 88 L.Ed. 15 (1943).

## CONCLUSION

It is very clear under existing case law that potential punitive damages and attorneys' fees must be attributed to each member of a putative class *pro rata*, and not aggregated and attributed entirely to the named plaintiff, for the purposes of determining satisfaction of the jurisdictional amount-in-controversy requirement. In light of this, the Court cannot find that it has subject matter jurisdiction without also finding that: (1) a reasonable jury could award punitive damages that are on the order of 1,000 times the actual damages; and (2) that such an award would be legally permissible. The Court finds neither, and therefore concludes that the Defendant has failed to carry its burden of establishing that the amount-in-controversy requirement for removal has been satisfied. The Court lacks subject matter jurisdiction over this case, and will accordingly

---

**15.** In fact, comparing the potential statutory damages with the required punitive damages radically understates the disproportionate nature of the punitive damages that would be required to support jurisdiction. The statutory damages themselves include a punitive factor, in that the statute allows treble damages. The *actual* damages suffered by the plaintiff class as a whole would, in fact, be the difference between the amount charged for the "all wheel" alignment ($49.99) and the value of a "front end" alignment (which, of course, does have some value), multiplied by number of "all wheel" alignments purchased by the plaintiff class as a whole during the relevant time period. Supposing, for illustrative purposes, that the value of a front-end alignment is $25, and that the average class member purchased three "all wheel" alignments from Sears during the relevant time period, the actual damages of the class as a whole would be more like $75,000. In this scenario, the ratio of jurisdiction-satisfying punitive damages to actual damages would be nearly 1000 to 1.

remand this case to the Court of Common Pleas of Lackawanna County pursuant to 28 U.S.C. § 1447(c).

Given that the Court lacks subject matter jurisdiction, Defendant's pending motion to dismiss (Doc. 2) will be denied as moot.

An appropriate order follows.

### ORDER

**NOW,** this 17th day of March 2003, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motion for remand (Doc. 8) is **GRANTED.**

(2) Defendant's motion to dismiss (Doc. 2) is **DENIED** as moot.

(3) This case shall be remanded to the Court of Common Pleas of Lackawanna County.

(4) The Clerk of Court shall mail a certified copy of this order of remand to the Clerk of Court for the Court of Common Pleas of Lackawanna County pursuant to 28 U.S.C. § 1447(c).

(5) The Clerk of Court shall mark this case closed.